IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

September 28, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| GEORGE A. RUFF | ) | FOR PUBLICATION |
| | ) | |
| Appellant | ) | FILED: SEPTEMBER 28, 1998 |
| | ) | |
| | ) | BLOUNT COUNTY |
| v. | ) | |
| | ) | HON. D. KELLY THOMAS, JR. |
| | ) | JUDGE |
| STATE OF TENNESSEE | ) | |
| | ) | NO. 03-S-01-9711-CC-00140 |
| Appellee | ) | |

AT JACKSON

| | | |
|---|---|---|
| BILLY JOE SMITH | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| | ) | UNICOI COUNTY |
| v. | ) | |
| | ) | HON. ARDEN L. HILL, |
| | ) | JUDGE |
| STATE OF TENNESSEE | ) | |
| | ) | NO. 03-S-01-9711-CC-00135 |
| Appellee | ) | |

For Appellant Ruff:                                    For Appellee:

CHRIS RALLS                                            JOHN KNOX WALKUP
Maryville, TN                                          Attorney General and Reporter

                                                       MICHAEL E. MOORE
                                                       Solicitor General

                                                       TIMOTHY F. BEHAN
                                                       Assistant Attorney General
                                                       Nashville, Tennessee

                                                       MICHAEL L. FLYNN
                                                       District Attorney General
                                                       Maryville, Tennessee

For Appellant Smith:                                   For Appellee:

JOSEPH LIDDELL KIRK                                    JOHN KNOX WALKUP
Knoxville, Tennessee                                   Attorney General and Reporter

                                                       MICHAEL E. MOORE
                                                       Solicitor General

                                                       KATHY MORANTE
                                                       Deputy Attorney General

                                                       MARVIN E. CLEMENTS, JR.
                                                       Assistant Attorney General
                                                       Nashville, Tennessee

                                                       DAVID E. CROCKETT
                                                       District Attorney General
                                                       Johnson City, Tennessee

                                                       LISA D. NIDIFFER
                                                       Assistant District Attorney General
                                                       Erwin, Tennessee

                                                       STEVEN R. FINNEY
                                                       Assistant District Attorney General
                                                       Elizabethton, Tennessee

OPINION

AFFIRMED                                                          BIRCH, J.

We granted the appellants, George Ruff and Billy Joe Smith, permission to appeal and consolidated their cases to address the validity of indictments that failed to charge a specific culpable mental state. For the reasons set forth herein, under the controlling case of State v. Hill, 954 S.W.2d 725 (Tenn. 1997), we hold that the indictments are sufficient. Accordingly, the convictions resulting from these indictments are valid.

In addition to the above issue, each appellant raises a separate second issue. Ruff contends that the testimony of a Department of Human Services (DHS) investigator concerning certain statements made to her by the victim was inadmissible. We find that admission of these hearsay statements was error. However, in light of the strength of the State's proof, this error does not appear to have affirmatively affected the result of the trial.

Smith challenges the trial court's denial of a motion requesting an *ex parte* hearing to establish his particularized need for access to a psychiatric expert. We find no error. In consideration of our holdings on these respective issues, the judgments entered by the trial courts and sustained by the Court of Criminal Appeals are affirmed.

I

Because the issues before us are questions of law, our review is *de novo*. State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997). First, Ruff contends that the conviction for aggravated sexual battery is void because the indictment failed to charge a culpable mental state. This issue was first raised by Ruff in his application for permission to appeal to the Court under Tenn. R.

App. P. 11.  Defenses based on defects in the indictment are usually foreclosed if not raised prior to trial; however, a court may notice at any time during the pendency of the proceedings the defense that the indictment fails to show jurisdiction or fails to charge an offense.  Tenn. R. Crim. P. 12(b) and (f).  Ruff asserts that the omission from the indictment of the culpable mental state deprived the trial court of "an essential jurisdictional element without which there can be no valid prosecution."

The indictment against Ruff states:

> GEORGE ANTHONY RUFF, on the 27th day of March, 1991, in Blount County, Tennessee, and before the finding of this indictment, did unlawfully engage in sexual contact with [A.K.],[1] a person less than thirteen (13) years of age, in violation of Tennessee Code Annotated, Section 39-13-504, all of which is against the peace and dignity of the State of Tennessee.

The aggravated sexual battery statute, Tenn. Code Ann. § 39-13-504 (1991), does not describe a culpable mental state.  It simply defines aggravated sexual battery as "unlawful sexual contact" accompanied by certain aggravating circumstances.  However, the definition of "sexual contact" in Tenn. Code Ann. § 39-13-501(6) (1991) _does_ describe the culpable mental state:

> (6)  "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification; . . . .

---

[1]Due to the age of the victim and the nature of the offense, we identify the victim by initial only.

Thus, to establish the offense of aggravated sexual battery, the perpetrator must have acted with intent.

In <u>Hill</u>, a defendant convicted of aggravated rape insisted that the omission of a culpable mental state from the indictment rendered his conviction invalid. We rejected Hill's argument and established the following rule:

> for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, an indictment which fails to allege such mental state will be sufficient to support prosecution and conviction for that offense so long as
>
> > (1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;
> >
> > (2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and
> >
> > (3) the mental state can be logically inferred from the conduct alleged.

954 S.W.2d at 726-27.

Like the aggravated rape statute in <u>Hill</u>, the aggravated sexual battery statute in Ruff's case does not expressly require a culpable mental state. Rather, one must ascertain the requisite mental state by referring to the definitions in Tenn. Code Ann. § 39-13-501, found in the same chapter. The sole distinction in <u>Hill</u>

4

is the fact that a different provision supplied the mental state.[2] This distinction is not pertinent here. Therefore, we find <u>Hill</u> completely analogous and applicable to the case under submission.

Applying the three prongs of <u>Hill</u>, we first find that the specific reference to the statute prohibiting aggravated sexual battery placed Ruff on sufficient notice of the offense with which he was charged. Likewise, the language of the indictment provided the trial court with ample information upon which to base a proper judgment and to protect Ruff from reprosecution for the same offense. Second, the language was clear and concise. It met the requirements of form outlined in Tenn. Code Ann. § 40-13-202 (1990).[3] Third, in <u>Hill</u> we determined that recklessness, knowledge, or intent may be inferred from the conduct alleged in that case--unlawful sexual penetration. <u>Id.</u> at 729. Similarly, we determine here that the intentional nature of aggravated sexual battery may be inferred from the conduct alleged in the indictment--<u>unlawful</u> sexual contact. Therefore, the indictment against Ruff clearly satisfies the requirements set forth in <u>Hill</u>, and the conviction based on it is valid.

II

---

[2]Because the statute in <u>Hill</u> neither expressly required nor plainly dispensed with the requirement of a culpable mental state, Tenn. Code Ann. § 39-11-301(c)(1991) supplied the requisite mental state: "intent, knowledge or recklessness."

[3]Tennessee Code Annotated § 40-13-202 (1990) provides that an indictment must:

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; . . . .

Next, we address Ruff's contention that the admission of the victim's hearsay statements to the DHS investigator was plain error requiring a new trial. Juanita Flynn, an investigator for the DHS, testified as to the details of her interview with the victim on April 2, 1991. Referring to her notes, Flynn testified that the victim told her that the defendant had touched her on her private parts some twenty times. Flynn gave explicit details of some of the alleged incidents. Ruff's counsel objected twice to this testimony, first because Flynn was "testifying from her notes," and second because Flynn was describing alleged incidents of sexual abuse which had not been charged. The trial court overruled both objections.

In the Court of Criminal Appeals, Ruff challenged only the fact that Flynn used her notes to testify. A majority of the court ruled that Flynn properly referred to the notes, pursuant to Tenn. R. Evid. 803(5), in order to refresh her memory. Judge Wade dissented, finding that Flynn's testimony was inadmissible hearsay and that its admission was plainly erroneous under Tenn. R. Crim. P. 52(b). Ruff has now adopted Judge Wade's position.

In State v. Livingston, we held that "in cases where the victim is a child, neither the fact of the complaint nor the details of the complaint to a third party is admissible under the fresh-complaint doctrine." 907 S.W.2d 392, 395 (Tenn. 1995). Moreover, because a prior complaint constitutes hearsay, it is not admissible as substantive evidence unless it satisfies some hearsay exception, and it is not admissible as corroborative evidence unless it satisfies the prior consistent statement rule. Id. at 395, 398. In this case, the DHS investigator related the victim's

6

statements concerning sexual acts committed upon her by the defendant. This was hearsay not admissible under any hearsay exception. Therefore, the admission of Flynn's testimony was error.

The remaining question is whether admission of this testimony constitutes reversible error. In this case, the jury heard substantial testimony from both the victim and the victim's sister, who witnessed the specific incident for which Ruff was charged. The victim testified that in late March 1991, Ruff came into the bedroom where she was in bed with her twelve-year-old sister. He reached under the covers and touched her on her lower private parts and her breasts. When the victim's sister got out of bed and went into another room, he then got into bed with the victim and began touching her again. The victim's sister testified that she saw Ruff's hand moving under the covers on her sister. She knew his hand was underneath the victim's clothes because she could hear the panty elastic pop.

Considering this evidence and the entire record, we cannot find that the admission of the hearsay more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R. App. P. 36(b). Nor can we find that the error affirmatively affected the result of the trial on the merits. Tenn. R. Crim. P. 52(a); <u>Livingston</u>, 907 S.W.2d at 399. Accordingly, in light of the strength of the State's case against Ruff, we affirm the judgment of the Court of Criminal Appeals upholding the conviction.

We move now to an analysis of the indictments against Billy Joe Smith charging aggravated kidnaping, two counts of aggravated rape, and the aiding and abetting of aggravated rape.[4] Smith challenged the indictments for the first time in the Court of Criminal Appeals, where he argued that the indictments were defective because they omitted the culpable mental state. The Court of Criminal Appeals found it appropriate to consider the issue under Tenn. R. App. P. 13(b), which requires *sua sponte* consideration of the subject-matter jurisdiction of a trial or appellate court. The court then rejected Smith's argument, finding the convictions valid under Hill, 954 S.W.2d 725.

The indictment charging Smith with aggravated kidnaping provided:

> that BILLY JOE SMITH and TERRY DEAN SNEED, on or about the 29th day of November, 1992, in the County [Carter] and State aforesaid, and before the finding of this Indictment, did unlawfully remove Karen Rios from her place of employment, so as to substantialy [sic] interfere with Karen Rios' liberty, while the said BILLY JOE SMITH and TERRY DEAN SNEED were armed with a deadly weapon, to-wit: a Knife, in violation of Section 39-13-304 of the Tennessee Code Annotated, all of which is against the peace and dignity of the State of Tennessee.

Unlike the aggravated rape statute in Hill, the aggravated kidnaping statute, Tenn. Code Ann. § 39-13-304 (1991), refers to a culpable mental state by defining kidnaping as "false imprisonment,

---

[4]Smith was also charged and convicted of aggravated robbery, but he has not challenged that count in this appeal.

as defined in § 39-13-302," accompanied by certain aggravating circumstances. Section 39-13-302 (1991), in turn, defines false imprisonment as the <u>knowing</u> removal or confinement of another, unlawfully, so as to interfere with the person's liberty. We think that the reasoning in <u>Hill</u> applies with even greater force here because the mental state was provided by the statute cited in the indictment, thereby placing Smith on notice that knowledge is an element of the offense.

Applying the first <u>Hill</u> prong, we find that both Smith and the trial court were placed on sufficient notice of the offense upon which a judgment would be entered. In addition, the language was ample to provide protection from reprosecution for this same offense. Under the second <u>Hill</u> prong, we find that the form of the indictment met the statutory requirements of Tenn. Code Ann. § 40-13-202. Under the final <u>Hill</u> prong, we conclude that the requisite mental state, knowledge, is easily inferable from the conduct alleged in the indictment--the unlawful removal of a person while armed with a deadly weapon. In short, the language of this count of the indictment charging aggravated kidnaping was legally sufficient under the <u>Hill</u> criteria; the judgment of conviction is valid.

The final <u>Hill</u> issue concerns the validity of the convictions entered against Smith pursuant to indictments charging two counts of aggravated rape and one count of aiding and abetting aggravated rape. The two counts of aggravated rape both provided:

> that BILLY JOE SMITH heretofore, to wit, on or about the 29th day of November, 1992, in the County aforesaid, and before the finding of this indictment, did unlawfully sexually

9

> penetrate Karen Rios, by forcing her to have
> sexual intercourse with him while the said
> BILLY JOE SMITH was armed with a deadly
> weapon, to-wit: a knife, and did thereby cause
> bodily injury to the said Karen Rios, and
> further, the said BILLY JOE SMITH, was aided
> or abetted in committing this aggravated rape
> of Karen Rios by another person, Terry Dean
> Snead,[5] contrary to Tennessee Code Annotated,
> 39-13-502, and against the peace and dignity
> of the State of Tennessee.

The indictment for aiding and abetting aggravated rape provided:

> that TERRY DEAN SNEAD, on or about the 29th
> day of November, 1992, in the County aforesaid
> and before the finding of this indictment, did
> unlawfully sexually penetrate Karen Rios, by
> forcing her to have sexual intercourse with
> him while the said TERRY DEAN SNEAD was armed
> with a deadly weapon, to-wit: a knife and did
> thereby cause bodily injury to the said Karen
> Rios, and further, the said TERRY DEAN SNEAD,
> was aided and abetted in committing this
> aggravated rape of Karen Rios by another
> person, Billy Joe Smith, contrary to Tennessee
> Code Annotated, 39-13-502, and against the
> peace and dignity of the State of Tennessee.

(Emphasis added). Because these counts involve charges of aggravated rape under the Criminal Sentencing Reform Act of 1989, our analysis is directly controlled by Hill.

The indictment in Hill stated that the defendant "did unlawfully sexually penetrate [the victim] a person less than thirteen (13) years of age, in violation of Tennessee Code Annotated 39-13-502, . . . ." We found this language sufficient to support the indictment and subsequent conviction. Id. at 729. Here, these three counts expressly refer to Tenn. Code Ann. § 39-13-502. In addition, the culpable mental state is even more easily

---

[5]We note that this name is spelled "Sneed" in the indictment for aggravated kidnaping. We cannot ascertain the correct spelling.

inferable from the present indictments because of the references to force and use of a deadly weapon. Consequently, the indictments charging aggravated rape and the aiding and abetting of aggravated rape are clearly sufficient, and the judgments of conviction based upon those indictments are valid.

By this ruling we wish to make clear that the Court has relaxed the strict pleading requirements of common law.[6] As we noted in Hill, "the purpose for the traditionally strict pleading requirement was the existence of common law offenses whose elements were not easily ascertained by reference to a statute. Such common law offenses no longer exist." Id. at 728. Thus, where the constitutional and statutory requirements outlined in Hill are met, an indictment which cites the pertinent statute and uses its language will be sufficient to support a conviction.

IV

Finally, we address Smith's contention that the trial court erred by denying him an *ex parte* hearing on the issue of his need for a psychiatric expert. On December 31, 1992, prior to trial and pursuant to Smith's motion, the trial court ordered Smith

---

[6]In State v. Hughes, 212 Tenn. 644, 371 S.W.2d 445 (1963), this Court upheld the dismissal of an indictment that charged that the defendant "did drive a motor vehicle upon a public highway of Davidson County . . . in wilful or wanton disregard for the safety of persons or property upon said highway, by driving said vehicle to his left across a yellow stripe in said highway." Id. at 646, 371 S.W.2d at 446. The Court held that the language of the indictment failed to charge an offense because it was not always unlawful to drive to the left of the yellow stripe. Id. at 648, S.W.2d at 447. The holding was thus even though the statute in question, Tenn. Code Ann. § 59-858 (1955)(the reckless driving statute), prohibited driving a motor vehicle in wilful or wanton disregard for the safety of persons or property. To the extent Hughes can be read to conflict with the principles of Hill, it is overruled.

11

to undergo a mental evaluation at the Watauga Mental Health Center for the purpose of determining (1) his sanity at the time of the offense, and (2) his competency to stand trial. Jerry Matthews, Ph.D., evaluated the defendant for the Watauga Mental Health Center. He recommended further evaluation at Middle Tennessee Mental Health Institute (MTMHI). The staff at MTMHI observed and examined Smith between March 31, 1993,and April 29, 1993. They concluded that Smith was competent to stand trial and sane at the time of the offenses. Their report noted their conclusions that Smith malingered and attempted to give an impression that he was mentally ill.

In August 1994 another staff member from the Watauga Mental Health Center, Richard Kirk, examined Smith at the Unicoi County Jail. Kirk had access to the report from MTMHI at the time he examined the defendant. He concurred in MTMHI's findings and concluded that Smith was malingering.

Two days before trial was to begin, Smith's counsel filed a motion requesting an independent psychiatric evaluation.[7] In the motion, counsel alleged that the initial report from Matthews was evidence that sanity was a significant factor in Smith's defense. He sought funds to employ an independent psychiatrist to conduct an examination and to assist in the evaluation, preparation, and presentation of the defense of insanity. The motion was heard and

---

[7]On September 9, 1994, Smith apparently filed a motion seeking an independent psychiatric evaluation. Neither the motion nor the result of the proceedings on September 9 is in the record, although the trial court referred to them in a later proceeding. During that later proceeding, Smith's counsel told the court he was going to file a motion for further evaluation. Such motion was actually filed on January 3, 1995, two days before the trial was scheduled to begin.

denied on the first day of trial.  The trial court denied the motion on the grounds that Tenn. Code Ann. § 40-14-207 (Supp. 1994),[8] governing expert services in capital cases, applied to capital cases only.  Further, the court noted that Smith had already been evaluated and was found competent to stand trial and sane when the offenses were committed.

In State v. Barnett, 909 S.W.2d 423 (Tenn. 1995), this Court held that due process may require the provision of expert assistance to an indigent defendant in a non-capital case.  In Barnett, we established the standard for ascertaining when such assistance is necessary.  First, we determined when an *ex parte* hearing is required on the issue of expert assistance:  "when an indigent defendant, in a written sealed motion to the trial court alleges particular facts and circumstances that raise the question of the defendant's sanity."  Id. at 429-30.  Next, we determined when a state-funded psychiatric expert is required:

> [B]efore an indigent defendant is entitled to the assistance of a state-funded psychiatric expert, the defendant must make a threshold showing of particularized need.  To establish particularized need, the defendant must show that a psychiatric expert is necessary to protect his right to a fair trial. Unsupported assertions that a psychiatric expert is necessary to counter the State's proof are not sufficient.  The defendant must

---

[8]Tenn. Code Ann. §40-14-207(b) (Supp. 1994) provides in part:

> (b) In capital cases where the defendant has been found to be indigent by the court of record having jurisdiction of the case, such court in an *ex parte* hearing may in its discretion determine that investigative or expert services or other similar services are necessary to ensure that the constitutional rights of the defendant are properly protected.

13

> demonstrate by reference to the facts and circumstances of his particular case that appointment of a psychiatric expert is necessary to insure a fair trial. Whether or not a defendant has made the threshold showing is to be determined on a case-by-case basis, and in determining whether a particularized need has been established, a trial court should consider all facts and circumstances known to it at the time the motion for expert assistance is made.

Id. at 431. Absent an abuse of discretion, the trial court's ruling on the necessity for an expert will be upheld. Id.

Applying the foregoing to this case, we agree with the Court of Criminal Appeals that the trial court did not abuse its discretion in denying Smith's request for appointment of a psychiatric expert. Like the defendant in Barnett, Smith had already received a full psychiatric evaluation at State expense. Apparently, his dissatisfaction with the results of that evaluation prompted him to request another evaluation. However, he has failed to make the required threshold showing of particularized need for the additional psychiatric assistance he sought. Smith's counsel did not advise the trial court of any evidence he planned to adduce from Smith's family, nor did he articulate any other particularized need for another evaluation. As the Court of Criminal Appeals explained, he simply argued that the MTMHI's reports were inconsistent and invalid, and that he needed another evaluation in order to determine if the tests given by MTMHI were valid.

Courts are not required to find the defendant an expert who will support his theory of the case. See Ake v. Oklahoma, 470 U.S. 68, 83, 105 S. Ct. 1087, 1096, 84 L. Ed.2d 53, 66 (1985); Barnett, 909 S.W.2d at 431. This is apparently what Smith is

14

attempting to accomplish.  Accordingly, based on the facts and circumstances before it, the trial court did not err in denying Smith's motion for expert assistance.[9]

In conclusion, the indictments in these cases are sufficient, and the convictions based thereon are valid.  Moreover, there is no merit to the secondary evidentiary and procedural issues raised by the appellants.  The judgments of conviction entered against both appellants are accordingly affirmed.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Drowota, Holder, JJ.
Reid, J., not participating

---

[9]We note that, in the Court of Criminal Appeals, Smith challenged the denial of his motion for an independent psychiatric evaluation.  Before this Court, however, he challenges the lack of an *ex parte* hearing regarding the need for an evaluation, citing Barnett as support.  Because Smith's trial was held in January 1995, and Barnett was not published until November 1995, neither Smith nor the trial court had the benefit of its guidance.  It is not surprising, then, that Smith did not request an *ex parte* hearing, as required by Barnett, until he made his application to appeal to this Court.  We find that the ultimate issue is whether Smith showed a particularized need for a psychiatric expert.  He failed to do so.  This question having been decided to his detriment, the preliminary issue of denial of an *ex parte* hearing is of no consequence.