IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2007

## ABDULLAH MORRISON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-03636     Arthur T. Bennett, Judge**

---

**No. W2006-02480-CCA-R3-PC  - Filed December 3, 2007**

---

The petitioner, Abdullah Morrison, appeals the denial of his petition for post-conviction relief from his first degree murder conviction, arguing that his trial counsel was ineffective for failing to present expert witness testimony on his diminished capacity.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Abdullah Morrison.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was convicted by a Shelby County jury of first degree premeditated murder and sentenced to life in prison.  His conviction was subsequently affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal.  See State v. Abdullah Morrison, No. W2002-00881-CCA-R3-CD, Shelby County, slip. op. at 1 (Tenn. Crim. App. Oct. 22, 2003), perm. to appeal denied (Tenn. Mar. 8, 2004).  Our direct appeal opinion provides the following account of the crime:

> The following facts are not in dispute.  On August 30, 1999, Nathaniel
> Tyrone Bell (the victim) and his girlfriend, Samantha Black, were dropped off at the

victim's grandmother's house. At about the same time, the victim's grandmother, Mary Wright, and the victim's cousin, Loretha Strong, were leaving the house to go to the store down the street. The victim and his girlfriend entered the house. Latasha Bell, the victim's sister, and the defendant were in the living room. Bell was listening to a CD player that was apparently owned by the defendant. The victim and the defendant got into an argument over the CD player. The defendant pushed the victim, followed by the victim's hitting the defendant. The two then fought each other for a few minutes, during which time a wall was broken. The two girls broke up the fight. The defendant left and walked to his grandmother's house next door.

A few minutes later, the defendant left his grandmother's house and went to the store down the street. In order to get to the store, he had to walk past the victim's house. By this time, the victim and several others were on the victim's front porch. The defendant returned from the store anywhere from thirty to forty-five minutes later. He approached the victim, who was still on the porch, and pulled out a gun. The victim was unarmed. The defendant shot the victim one time in the chest. The victim died near the scene a short time later.

Id. at 1-2.

On January 25, 2005, the petitioner filed a *pro se* petition for post-conviction relief in which he raised the claim of ineffective assistance of counsel. Post-conviction counsel was appointed, and a supplemental petition for post-conviction relief was filed alleging that trial counsel was ineffective for failing to submit proof at trial of the petitioner's diminished capacity. At the evidentiary hearing, Dr. Rokeyn S. Farooque, a forensic psychiatrist at Middle Tennessee Mental Health Institute ("MTMHI"), testified that the petitioner was admitted for a thirty-day inpatient mental evaluation on January 25, 2001, and discharged back to the jail on February 22, 2001. She said she diagnosed the petitioner with a depressive disorder not otherwise specified, anti-social personality disorder, and cannabis and cocaine abuse. The petitioner's I.Q. fell in the range between 71 to 84, which placed him in the borderline between low average functioning and mental retardation. His social history revealed that he had lost both parents as a child and had a history of drug, alcohol, and behavioral problems. He had been placed in several juvenile facilities and was hospitalized at the age of sixteen in a juvenile psychiatric facility, where he had been diagnosed with major depressive disorder. Dr. Farooque testified that she prescribed the petitioner an anti-depressant and a mild tranquilizer.

Dr. Farooque acknowledged on cross-examination that she determined that the petitioner was competent to stand trial, that a defense of insanity could not be supported, and that there was no need for him to be judicially committed to a psychiatric facility. She confirmed that MTMHI had also determined, based on its evaluation of the petitioner, that a diminished capacity defense could not be supported:

Yeah, diminished capacity is that he was charged with first degree murder. And even saying that, we cannot support diminished capacity, that means we looked

at the mens rea, the intent. And for first degree murder it's intent and premeditation. So we felt like his mental capacity during the time of the incident was not such that there was diminished [capacity] to form the mens rea.

Trial counsel, who was assigned from the public defender's office to represent the petitioner, testified that he had been licensed for twenty years and employed with the public defender's office for the past ten years. He said he originally requested that the petitioner be evaluated for competency and insanity but then made a subsequent request that he also be evaluated to determine if a defense of diminished capacity could be supported. He stated that he was informed that the petitioner was determined to be competent and that neither insanity nor diminished capacity could be supported. Trial counsel testified that he had no evidence to support a diminished capacity defense and no legal or factual reasons to request another mental evaluation or a contested competency hearing.

The twenty-five-year-old petitioner testified that he committed the murder when he was eighteen years old. He said he started getting into trouble at age eleven after his mother died and described having been incarcerated in a series of juvenile facilities, where he attended special education classes. After his mother's death, his grandmother had him evaluated by the social security office and he began receiving disability benefits based on the mental problems he was experiencing "dealing with the death" of his mother. On cross-examination, the petitioner testified that he received the disability benefits due to his depression. He said his mental issues consisted of his depression, for which he took medication, and his "bad temper."

On October 24, 2006, the post-conviction court entered an order denying the petition for post-conviction relief. Among other things, the court found that a defense of diminished capacity could not be supported and that counsel "made the proper decisions with regard to the defense of diminished capacity."

## ANALYSIS

The petitioner contends on appeal that trial counsel was ineffective for failing to put on any proof of his diminished capacity. Specifically, he argues that Dr. Farooque's testimony regarding his mental evaluation would have been relevant to the issue of whether he could have formed the requisite intent for the murder, as well as to his credibility, since the "jury might have judged his credibility differently than [sic] someone who was not claiming diminished capacity." The State argues that trial counsel was not ineffective for failing to present evidence of the petitioner's diminished capacity because there was no such evidence to present. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However,

-3-

review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The record in this case fully supports the findings and conclusions of the post-conviction court. Trial counsel testified that MTMHI's evaluation of the petitioner resulted in a determination that he was competent and that neither a defense of insanity nor diminished capacity could be supported. Dr. Farooque testified that she determined that the petitioner was competent and that insanity could not be supported. She agreed that MTMHI staff had additionally determined that a

defense of diminished capacity could not be supported, and identified a letter to this effect from the forensic services director of the institute to the trial court. This letter, admitted as an exhibit to the hearing, states in pertinent part:

> The original evaluation team reviewed the medical records which were produced during the initial pre-trial evaluation. Based on their review of these records, the clinicians felt that they could satisfactorily address the matter of diminished capacity. It is the evaluation team's recommendation that [the petitioner's] mental condition at the time was such that he did not lack the ability to form intent to kill and to premeditate. Diminished capacity cannot be supported.

None of Dr. Farooque's testimony, including that with respect to the petitioner's borderline I.Q. scores, depressive and anti-social personality disorders, and history of cannabis and cocaine abuse, would have supported an argument on diminished capacity. As such, the petitioner cannot show that trial counsel was deficient for failing to present Dr. Farooque's testimony or that he was prejudiced as a result of that alleged deficiency.

## CONCLUSION

We conclude that the evidence supports the post-conviction court's finding that the petitioner received effective assistance of trial counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE