# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE, v. FREDERICK  RYDEL WALKER.

**Direct Appeal from the Circuit Court for Marshall County**
**No. 13422 Charles Lee, Judge**

**01C01-9807-CC-00301**
**No. M1998-00068-CCA-R3-CD - Decided May 12, 2000**

On April 23, 1998, the appellant, Frederick Rydel Walker, was convicted by a jury in the Marshall County Circuit Court of one count of attempted second degree murder and two counts of reckless endangerment.  On June 3, 1998, the trial court sentenced the appellant as a multiple Range II offender to twenty years incarceration and imposed a five thousand dollar fine for the attempted second degree murder conviction.  The trial court also sentenced the appellant to three years and eight months incarceration for each of the reckless endangerment convictions and imposed a one thousand five hundred dollar fine for each offense.  The trial court ordered that the two reckless endangerment sentences be served concurrently with each other but consecutively to the attempted second degree murder sentence for an effective sentence of twenty-three years and eight months incarceration in the Tennessee Department of Correction.[1]  In this appeal as of right, the appellant presents the following issues for our review:  (1) whether Count One of the indictment sufficiently alleges the crime of attempted second degree murder; and (2) whether the evidence is sufficient to sustain the appellant's conviction of one count of attempted second degree murder.  Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

OGLE, J. delivered the opinion of the court, in which WADE, P.J. and PEAY, J., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, Frederick Rydel Walker.

Paul G. Summers, Attorney General and Reporter, Kim R. Helper, Assistant Attorney General, for the appellee, State of Tennessee.

---

[1]The judgment form for the attempted second degree murder conviction mistakenly states that this count runs concurrent with counts four (reckless endangerment) and five (reckless endangerment).  However, the transcript and the judgments for the reckless endangerment convictions clearly state the consecutive nature of the sentences.  When there is a conflict between a judgment form and the transcript of the proceedings, the transcript controls.  See State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991); State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985); State v. Kaywood, No. 03C01-9901-CC-00041, 2000 WL 5044, at *8 (Tenn. Crim. App. at Knoxville, January 5, 2000).

**OPINION**

**I. Factual Background**

The appellant's convictions resulted from a shooting at the residence of Thomas Anthony Blackwell in Lewisburg, Tennessee on January 14, 1998. Blackwell testified on behalf of the State that he regularly repaired cars in the garage of his home. Prior to the shooting, Blackwell had repaired the appellant's car on several occasions and the appellant had promptly paid Blackwell for his services. Approximately one month before the shooting, the appellant called Blackwell and told him that his car was at the Marco Motel and could not be driven. Blackwell towed the car to his garage and advised the appellant that the car needed a new transmission. The appellant told Blackwell to wait on the repairs and the car remained parked in Blackwell's yard for approximately one month.

Additionally, Blackwell testified that during this time the appellant was moving and Blackwell rented a U-Haul for the appellant's use. When Blackwell returned the truck, he was advised that there were additional charges because the appellant had exceeded the mileage allowance and had failed to return the truck with half a tank of gasoline. Blackwell paid the excess charges and as a result, the appellant owed him for the use of the truck and for towing the car. Blackwell told Philip Walker, the appellant's father, that he would not return the appellant's car until the debt was paid.

On January 14, 1998, at approximately 6:30 p.m., Blackwell drove by Phillip Walker's house and saw the appellant outside. Blackwell stopped and asked the appellant to do something about the car. The appellant asked for his car keys but was advised by Blackwell that the keys were at Blackwell's house. At the appellant's suggestion, he and Blackwell got into Blackwell's car and started toward Blackwell's house. As Blackwell drove toward his house, he noticed that the appellant had a pistol in his hand. According to Blackwell, the appellant became angry and moved his hand up and down several times in order to ensure that Blackwell saw the gun.

As they approached Blackwell's house, Blackwell told the appellant that he did not need the gun to get his car. He also advised the appellant that he would not get his car until the debt was paid. When they reached Blackwell's house, Blackwell parked the car near the porch, reached over, pushed the appellant's arm, and jumped out of the car. As Blackwell ran toward the house, the appellant started firing the gun in the direction of Blackwell. The bullets shattered the glass storm door and also hit the wooden side door leading into the house. During the shooting, Blackwell's wife and seven year old stepdaughter were inside the house. As Blackwell entered the house, he told them to go to the back of the house. After entering the house, Blackwell heard several more gunshots.

Once inside, Blackwell located his shotgun but decided not to take it outside. He left the house and jumped into his car to pursue the appellant. As he was leaving his driveway,

he heard another gunshot and saw the appellant running across the yard of his neighbor, Connie Blackwell. Blackwell drove to Connie Blackwell's house and asked her to call the police.

Blackwell was not injured as a result of the shooting. Blackwell recalled that he heard a total of six or seven gunshots during the shooting. The glass storm door was shattered by bullets, and as he entered the house, several bullets entered the frame of the wooden side door only inches from his head. Blackwell identified the appellant as the shooter in a photographic lineup and at trial.

Dawn Blackwell testified that on January 14, 1998, she and her seven year old daughter were in the living room of their home when her husband, Thomas Blackwell, ran into the house and told her to take her daughter and go to the back of the house. She heard a "pop, pop, pop" sound but did not realize that the sound was gunfire. When her husband left the house to pursue the shooter, Mrs. Blackwell looked out a bedroom window and saw a person running down the street. She later identified the appellant at a photographic lineup and also at trial as the person she saw running down the street.

Brian Cook, a detective with the Lewisburg Police Department, investigated the shooting at Thomas Blackwell's residence. When Cook arrived at the scene, he located approximately five bullet holes scattered around the side door. Cook found a spent bullet lying on the floor inside the home and two more bullets embedded in an interior door frame near the utility room. Cook concluded that at least three bullets entered the inside of the residence.

## II. Analysis
### Sufficiency of the Indictment

The appellant first contends that Count One of indictment did not sufficiently allege the crime of attempted second degree murder.[2] Specifically, the appellant argues that Count One states only a legal conclusion and fails to aver facts constituting every element of attempted second degree murder.

It is well known principle of law that a criminal indictment must include a sufficient description of the charged offense to insure that the accused understands the special nature of the charge he is called upon to answer. Jackson v. Virginia, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786 (1979). In Tennessee, an indictment must "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended. . . ." Tenn. Code Ann. § 40-13-202 (1997). Moreover, provisions of state and federal constitutions guarantee the criminally accused knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. Art I, § 9.

---

[2]The appellant did not challenge the sufficiency of the indictment prior to trial or in his motion for new trial. However, because the indictment confers subject-matter jurisdiction on this court, it is properly raised on appeal. Tenn. R. Crim. P. 12(b)(2); Tenn. R. App. P. (13(b); Dykes v. Compton, 978 S.W.2d 528, 529(Tenn. 1998); State v. Seagraves, 837 S.W.2d 615, 617-18 (Tenn. Crim. App. 1992).

While the indictment must contain a sufficient description of the charged offense, "it is not necessary to amplify and encumber the charge by circumstantial detail and minute description." State v. Griffis, 964 S.W.2d 577, 591 (Tenn. Crim. App. 1997). The basic requirements are: (1) to provide notice to the accused of the offense with which he is charged; (2) to notify the trial court of the charge so that it can enter an appropriate judgment and sentence; and (3) to describe the offense so as to protect the accused against double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); Griffis, 964 S.W.2d at 590-91.

This court has held that failure to specifically allege an element of the offense is not fatal "if the elements are necessarily implied from the allegations made." State v. Christian, No. 03C01-9609-CR-00336, 1998 WL 125562, at *5 (Tenn. Crim. App. at Knoxville, March 23, 1998), perm. to appeal denied, (Tenn. 1999) (citing State v. Marshall, 870 S.W.2d 532, 536 (Tenn. Crim. App. 1993). If the offense is alleged in such a way that the defendant cannot fail to be apprised of the elements of the offense, the charge is sufficient, notwithstanding the fact that an element may not be specifically alleged. Id.

Furthermore, in several recent cases, our supreme court has relaxed the common law requirements governing indictments. First, in State v. Hill, 954 S.W.2d 725, 728 (Tenn. 1997), the Court noted that "the description of the proof necessary to sustain a conviction must be both more inclusive and conclusive than the language of the indictment." In Dykes v. Compton, 978 S.W.2d 528, 530 (Tenn. 1998), the Court stated, "We wish to emphasize once again the fact that the Court has moved away from the strict pleading requirements of common law." Also, in Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998), our supreme court reiterated its intent to "relax strict pleading requirements of the common law" and concluded that "where the constitutional and statutory requirements in Hill are met, the indictment will be sufficient to support a conviction." See also State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999).

Recently, this court held that an indictment charging attempt to commit a crime should specifically allege the criminal intent to commit the specific crime and an overt act. Christian, No. 03C01-9609-CR-00336, 1998 WL 125562, at *8-9; see also Freeman v. Raney, No. 02C01-9807-CC-00202, 1999 WL 157397, at *4 (Tenn. Crim. App. at Jackson, March 24, 1999); Wyatt v. State, No. 03C01-9802-CC-00057, 1999 WL 71967, at * 7 (Tenn. Crim. App. at Knoxville, February 16, 1999), perm. to appeal granted, (Tenn. 1999) (Wade, J., concurring).

The indictment in the instant case includes the following language:

Frederick Rydel Walker on the 14th day of January, 1998, in Marshall County, Tennessee, and before the finding of this indictment did unlawfully, feloniously, intentionally, and knowingly attempt to kill Thomas Anthony Blackwell, thereby attempting to commit the offense of Second Degree Murder, in violation of Tennessee Code Annotated Section 39-13-210, all in violation of Tennessee Code Annotated Section 39-12-101, and against the peace and dignity of the State of Tennessee.

In order for this indictment to be sufficient, it should specifically allege the criminal intent to commit the specific crime and an overt act. Christian, No. 03C01-9609-CR-00336, 1998 WL 125562, at *8-9. First, the terms "unlawfully, feloniously, intentionally, and knowingly" embody the criminal intent required to commit the specific crime of second degree murder. Furthermore, the words "attempt to kill" sufficiently describe an overt act. Wyatt, No. 03C01-9802-CC-00057, 1999 WL 71967, at * 7. We conclude this count provided sufficient detail to apprise the appellant of the charge and to give the trial court a basis for entering a proper judgment. Therefore, this challenge to the attempted second degree murder charge is without merit.

**Sufficiency of the Evidence**

The appellant also contends that the evidence is not sufficient to sustain his conviction of attempted second degree murder. Specifically, the appellant alleges that the State failed to rebut a hypothesis that the appellant's actions were only intended to frighten or intimidate the victim.

In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that "no reasonable trier of fact" could have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In this case, the jury found the appellant guilty of attempted second degree murder. With respect to the appellant's conviction, the applicable statute provides, "(a) Second degree murder is: (1) A knowing killing of another. . .." Tenn. Code Ann. § 39-13-210(a)(1) (1997). With regard to the culpable mental state, the applicable statute instructs:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to the circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause death.

Tenn. Code Ann. § 39-11-302(b) (1997). Moreover, criminal attempt occurs when a person acting with the kind of culpability otherwise required for the offense:

(1)  Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2)  Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3)  Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (1997).

We conclude that the State adduced ample evidence from which a rational juror could have concluded that the appellant *knowingly* attempted to kill the victim. Construing the evidence in the light most favorable to the State, the record in this case reveals that on January 14, 1998, the appellant insisted on going with Blackwell to his residence to get the keys to the appellant's car. Blackwell testified that during the car ride, the appellant became angry and repeatedly displayed a pistol. When they arrived at Blackwell's house, Blackwell ran into the house through the side door. The appellant stepped out of the car and began shooting in Blackwell's direction. The bullets shattered the glass storm door and damaged the wooden side door leading into the house. Blackwell additionally noted that several of the bullets struck the frame of the wooden side door only several inches from his head. Brain Cook testified that when he investigated the crime scene, he discovered approximately five bullet holes scattered around the side door and concluded that at least three bullets entered the residence. The evidence established that the appellant "deliberately aimed a pistol and shot several times at his intended victim," which is sufficient proof to support a conviction for second degree murder. State v. Porter, No. 03C01-9606-CC00238, 1997 WL 661419, at *3 (Tenn. Crim. App. at Knoxville, October 23, 1997), perm to appeal filed, (Tenn. February 2, 1998). The jury rejected the appellant's theory of the case. Again, this court may not reweigh the evidence nor substitute its own view for that properly reached by the trier of fact. The evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that the appellant knowingly attempted to kill Thomas Anthony Blackwell. This issue is without merit.

Accordingly, the judgment of the trial is affirmed.