IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 3, 2015

## KENNETH LEE ANDERSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. 11-CR-2      Lee Moore, Judge**

_____

**No. W2015-01306-CCA-R3-PC  -  Filed January 12, 2016**

_____

The petitioner, Kenneth Lee Anderson, appeals the post-conviction court's denial of his petition for post-conviction relief, arguing that he was denied the right to appellate counsel on direct appeal. After review, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMTOHY L. EASTER, JJ., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the appellant, Kenneth Lee Anderson.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was convicted by a Dyer County Circuit Court of the sale of less than .5 grams of cocaine and sentenced to twelve years in the Tennessee Department of Correction. The petitioner represented himself *pro se* during his trial, sentencing hearing, and motion for new trial. This court affirmed the judgments of the trial court in the petitioner's *pro se* direct appeal, and the Tennessee Supreme Court denied his application for permission to appeal.

The underlying facts of the case were set out by this court on direct appeal as follows:

In 2010, Investigator Chris Gorman of the Dyer County Sheriff's Office and Sergeant Todd Thayer of the Dyersburg Police Department were using a confidential informant, Penny Webber, to conduct undercover drug buys. According to Inv. Gorman, Ms. Webber began working for them so she could earn money in order "to get her driver's license back." Ms. Webber was paid $100 per drug buy. Inv. Gorman testified at trial that he was aware that Ms. Webber was a former cocaine user and that she had misdemeanor convictions for driving with a revoked license, shoplifting, theft, and assault. The officers did not ask Ms. Webber to target anyone specifically. Instead, the targets were "just people [Ms. Webber] knew that sold drugs, people that she had phone numbers for that she could call up and order up drugs." Sgt. Thayer testified that he and Inv. Gorman used Ms. Webber in forty or fifty drug buys.

On September 14, 2010, Ms. Webber called the [petitioner] to set up a drug buy. The officers recorded the phone conversation with Ms. Webber's permission, and the recording was played for the jury. Ms. Webber asked the [petitioner], "a fifty, where do I go," and the [petitioner] told her to come to "where he live[d] at." Sgt. Thayer testified that when Ms. Webber said she wanted a "fifty," it meant that she wanted to buy fifty dollars worth of cocaine. Once the meeting was arranged, the officers searched Ms. Webber and her car to make sure she did not have any drugs or money. Sgt. Thayer testified that he "pat[ted] down" Ms. Webber, as well as checking her shoes and socks. The officers both testified that they did not find anything on Ms. Webber or in her car. However, Sgt. Thayer admitted that he did not search Ms. Webber more thoroughly than a pat down because "[w]ith a female [confidential informant], that's about as far as it goes."

Once the officers searched Ms. Webber and her car, they gave her fifty dollars of "buy money." Inv. Gorman testified that he recorded the serial numbers for the money he gave Ms. Webber. The officers placed a digital video recorder in the back seat of Ms. Webber's car and another "with Ms. Webber." The video recorders started recording right before Ms. Webber left to meet the [petitioner]. However, Inv. Gorman testified that the battery pack for each video recorder "[ran] out just prior to the end of the deal," so "neither recording actually captured a hand to hand transaction." The officers also placed an audio transmitter on Ms. Webber

2

so that they could hear everything that went on in the car. The officers followed fifty to seventy-five yards behind Ms. Webber in an unmarked car. Because the officers were following so far behind Ms. Webber, they "didn't have [a] constant visual on her at all times."

Ms. Webber drove to the [petitioner]'s house to pick him up. The [petitioner] asked her to take him to a local Burger King so they could meet Chris Faulcon to get the cocaine. On their way to the Burger King, the [petitioner] made several statements about selling drugs, including that there were certain people he would not sell to, that he did not sell small amounts of cocaine, and that he did not sell anything "but good dope." Ms. Webber asked the [petitioner] if she could get an "eight ball." The [petitioner] told her she could get half of an "eight ball" for seventy-five dollars or three grams of cocaine for $150, but Ms. Webber insisted that she only had fifty dollars. The [petitioner] also told Ms. Webber that he had a nearby apartment that he sold "dope" from.

When they arrived at the Burger King, the [petitioner] told Ms. Webber not to be nervous. Ms. Webber gave the [petitioner] fifty dollars, and he got out of the car to meet with Mr. Faulcon. A short time later, the [petitioner] returned to the car. When Ms. Webber asked for the cocaine, the [petitioner] told her that Mr. Faulcon had been scared off by some police. The [petitioner] told Ms. Webber that they could get some cocaine at his apartment and that it would not "take two seconds to get it." Ms. Webber drove to the [petitioner]'s apartment, and the [petitioner] got out of the car. At no time while he was in the car did the [petitioner] give Ms. Webber the fifty dollars back. Ms. Webber testified at trial that the [petitioner] returned to the car and gave her some cocaine. The officers testified that they heard the [petitioner] return to the car over the audio transmitter.

Ms. Webber then drove to meet the officers at a prearranged location. Ms. Webber gave the officers the cocaine that she had purchased. Ms. Webber and her car were searched again, and nothing was found. A lab report from the Tennessee Bureau of Investigation (TBI) showing that the substance Ms. Webber turned over to the officers was .2 grams of cocaine was introduced into evidence at trial. Inv. Gorman, Sgt. Thayer, and Ms. Webber all testified that no one else approached Ms. Webber's car during the drug buy, that Ms. Webber never exited the car, and that Ms. Webber did not purchase the cocaine from someone other than the [petitioner]. Ms. Webber testified that she did not secret the cocaine into

3

the car and that she purchased it from the [petitioner] for fifty dollars. Inv. Gorman testified that Ms. Webber was a reliable informant and that he did not believe that she would have tried to sneak cocaine into her car.

In his case-in-chief, the [petitioner] recalled Ms. Webber and Sgt. Thayer to question them about exactly where he got out of Ms. Webber's car. The police report stated that the [petitioner] got out near a local convenience store rather than the [petitioner]'s apartment. However, Sgt. Thayer noted that the convenience store was near the [petitioner]'s apartment. Mr. Faulcon testified on the [petitioner]'s behalf. Mr. Faulcon testified that he did not trust Ms. Webber. Mr. Faulcon explained that Ms. Webber was a drug user and that he had previously sold drugs to her. Mr. Faulcon testified that he did not know if he met with the [petitioner] on September 14, 2010, because he had "sold so much cocaine" he could not remember. At the conclusion of the trial, the jury convicted the [petitioner] of the charged count of selling less than .5 grams of cocaine.

State v. Kenneth L. Anderson, No. W2012-01039-CCA-R3-CD, 2013 WL 5531703, at *1-3 (Tenn. Crim. App. Oct. 4, 2013), perm. app. denied (Tenn. Feb. 11, 2014).

The petitioner filed a timely *pro se* petition for post-conviction relief and, after the appointment of counsel, an amended petition was filed. The post-conviction court determined that all of the petitioner's issues had been previously determined, aside from his allegation that the trial court failed to appoint counsel for him on direct appeal.

At the beginning of the evidentiary hearing, the post-conviction court heard the arguments of the parties regarding the remaining issue. The petitioner's attorney argued that the petitioner had requested in his designation of transcript that an attorney be appointed to represent him during the appellate process. The State acknowledged such but noted that the petitioner did not request counsel in either his motion for new trial or notice of appeal. The State argued that the trial court would not have seen the designation of transcript and observed that there was no record from the Court of Criminal Appeals showing that the petitioner had asked for counsel. The State further noted that the petitioner proceeded *pro se* with his appeal and that there was no prejudice because his issues were considered by this court on appeal. The post-conviction court observed that it never saw the petitioner's designation of transcript in which he requested counsel.

The petitioner testified that he represented himself at the trial, sentencing hearing, and motion for new trial hearing. However, he requested that an attorney be appointed to represent him in the appeals process. At the same time that he filed his notice of appeal,

4

he filed a designation of transcript and statement of evidence in which he included a request for an attorney on appeal. He explained that he needed counsel on appeal because he was told he was not going to have access to the books he needed. The petitioner said, however, that he was not given counsel. He did not make any further filings with the trial court. He said that he tried to explain his predicament to this court in his brief, but this court said that it was something he should have addressed with the trial court.

The petitioner testified that he thought it "[p]ossibly" would have made a difference if he had counsel on appeal because he did not have access to books and had never done "an appeal on [his] own." The petitioner believed that, with counsel, his issues would have been presented properly and he "would have got . . . a better argument out of it." The petitioner agreed that he had elbow counsel at trial. He admitted that, at that motion for new trial hearing, he did not ask the court to appoint a lawyer to handle his appeal. He acknowledged receiving a letter that said he needed to refile his notice of appeal and sending a letter to the Dyer County Circuit Court Clerk in response saying that he would not file a new notice of appeal and would petition the Court of Criminal Appeals to proceed. He conceded that his letter contained nothing about the trial court's not having ruled on his request for counsel. He sent the letter before he filed his appellate brief. The petitioner admitted that in his motion for transcripts, filed a month after his letter to the Dyer County Circuit Court Clerk, he said nothing about his request for counsel. He acknowledged that the only request he made for counsel was in the designation of transcript.

Following the presentation of the proof, the post-conviction court observed that it "did everything but beg" the petitioner, and on several occasions, to have someone represent him at trial. The court noted that the petitioner never mentioned wanting counsel at trial, sentencing, or the motion for new trial hearing, nor was there any mention of such in his notice of appeal. The court stated that it never saw the designation of transcript and statement of evidence that was filed in April in which the petitioner indicated that he wanted counsel appointed and observed that the petitioner did not file any sort of motion on which the trial court could have ruled. The court further observed that neither a letter the petitioner sent in July to the court clerk, nor a motion to obtain transcripts he filed in August made any reference to a request for counsel. The court pointed out that the petitioner, in fact, said in the August motion that he would be representing himself during the appeals process. Moreover, the court found that all of the petitioner's issues were heard on appeal and, therefore, that there was no evidence of any prejudice. Thereafter, the court issued a written order, denying the petition. The court found that it was never made aware of any request by the petitioner to have counsel appointed for direct appeal and, regardless, that the petitioner failed to show any prejudice from the court's failure to appoint counsel.

5

## ANALYSIS

On appeal, the petitioner argues that he is entitled to post-conviction relief because the trial court failed to appoint counsel to represent him on direct appeal.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). Questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

With regard to the petitioner's claim, the post-conviction court's detailed findings are as follows:

> [A]lthough th[e] [petitioner] was repeatedly warned of the perils of proceeding pro se in this matter, he refused appointed counsel and that even after his hearing on his pro se Motion for New Trial, no request was made to the Court for appointment of counsel on appeal. The only written request for appointment of counsel on appeal was included in the [p]etitioner's Designation of Transcripts and Statement of Evidence which was filed on April 30, 2012, and which the Trial Court never received a copy and therefore was not ever aware of the request. In the [petitioner]'s Motion to Obtain Transcripts, which was filed on August 22, 2012, and which the Court was aware, the [petitioner] indicated that he would be representing himself pro se throughout the appellate process and no request was made for appointed counsel.

We conclude that the petitioner is not entitled to post-conviction relief. The petitioner had waived counsel at trial, sentencing, and the motion for new trial hearing with the court doing "everything but beg" the petitioner to accept counsel. The petitioner presumably tried to invoke his right to counsel for the first time on appeal but did so in a very unclear way, buried in a long paragraph in the designation of transcript that was never seen by the trial court. In a letter to the Dyer County Circuit Court Clerk, written

6

after the request for counsel, the petitioner did not make any mention of his request and that it had yet to be addressed. Thereafter, in a motion that the trial court did see, the petitioner stated that he would be representing himself throughout the appeals process. Given the petitioner's history of waiving his right to counsel, the trial court would have had no reason to treat his statement that he would be representing himself on appeal with skepticism or concern. In addition, the petitioner's issues were heard on appeal, and the best that the petitioner could say at the evidentiary hearing was that having counsel on appeal "possibly" would have made a difference. He did not point to a single concrete issue, even with the assistance of post-conviction counsel, that turned upon his having counsel on direct appeal to prevail.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE