IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 27, 2004

## DEJUAN J. SCOTT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-C-1791     Cheryl Blackburn, Judge**

_____

**No. M2003-00197-CCA-R3-PC - Filed March 2, 2004**

_____

The petitioner appeals the dismissal of his petition for post-conviction relief from his second degree murder conviction, arguing that the post-conviction court erred in finding that he received the effective assistance of trial counsel. Based on our review of the record, we conclude the petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was denied the effective assistance of counsel. Accordingly, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Patrick T. McNally, Nashville, Tennessee, for the appellant, Dejuan J. Scott.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner, Dejuan J. Scott, was charged by the Davidson County Grand Jury in a two-count indictment with first degree murder and especially aggravated robbery. The trial court severed the counts, and the petitioner was convicted in separate trials of especially aggravated robbery and second degree murder. The petitioner's second degree murder conviction was affirmed by this court on direct appeal, and the supreme court denied application for permission to appeal. See State v. Dejuan J. Scott, No. M1999-00764-CCA-R3-CD, 2000 WL 1208310 at *1 (Tenn. Crim. App. Aug. 23, 2000), perm. to appeal denied (Tenn. Feb. 26, 2001).

The petitioner filed a petition for post-conviction relief from his second degree murder conviction on February 26, 2002, followed by an amended petition on May 1, 2002. He alleged trial counsel provided ineffective assistance by, among other things, failing to adequately confer and consult with him about his case, failing to adequately investigate the case, failing to challenge the State's evidence presented at trial through pretrial motions to suppress or motions in limine, and failing to develop a consistent theory of defense.

At the November 13, 2002, post-conviction hearing, the petitioner testified trial counsel represented him in both his especially aggravated robbery case, which went to trial first and resulted in a conviction for that offense, and in his murder case, which went to trial in June 1999. The petitioner claimed trial counsel failed to consult with him about the murder case until the first day of trial, when he discussed the plea bargain offered by the State, which was twenty years at 85% for second degree murder. He rejected that offer and was ultimately convicted of second degree murder and sentenced to twenty-five years at 100%, to be served consecutively to the twenty-five-year sentence he had received in his especially aggravated robbery case.

The petitioner testified trial counsel discussed with him on the first day of trial whether he should testify in his own defense and recommended that he not testify because his prior robbery conviction could be introduced by the State. He complained trial counsel failed to discuss his defense strategy prior to trial, to go over his trial testimony to determine how it related to the theory of defense, and to discuss how the State's evidence might be inconsistent with his testimony. The petitioner testified the only potential witness trial counsel discussed calling on his behalf was Eric Brown, who did, in fact, testify at trial. He said his brother also testified, but trial counsel did not discuss his testimony with the petitioner beforehand. The petitioner testified he and trial counsel did not discuss any other potential witnesses, although there were others who could have offered testimony on his behalf. He estimated trial counsel spent only "[a] couple of minutes" discussing his murder case with him each time he came to court for a hearing on the case.

On cross-examination, the petitioner testified trial counsel came to see him once during the time between his especially aggravated robbery conviction and his murder trial. He conceded trial counsel talked to him about how his testimony in the especially aggravated robbery case had not gone well and suggested he not testify in the murder case, but he had chosen to take the stand in spite of counsel's advice. The petitioner acknowledged he had been able to bring out at trial that the victim was a dangerous person and a drug dealer and that his brother had testified that he had previously been robbed by the victim. In response to questioning by the trial court, the petitioner acknowledged his trial testimony, in which he described how the victim had held a gun on him and he had then shot the victim four times with his own gun after the victim turned his back to him, was the truth.

Leonardo Garrett, who lived in the same Nashville neighborhood as the victim, testified he was familiar with both the victim and the petitioner. He said he was driving down Foster Avenue between 10:00 and 10:15 a.m. on the day of the shooting when he saw the victim holding a gun to the petitioner's back and marching him down the sidewalk on Settle Court Drive. Garrett testified

he did not report what he saw to the police because he was "strung out" on "dope" during that period of his life. On cross-examination, he acknowledged he did not contact the petitioner's family or friends either, despite having heard that the petitioner was being charged with the victim's murder. When asked by the court how the petitioner's post-conviction counsel had known to subpoena him, Garrett suggested that someone in a group of individuals with whom he had drunk beer and discussed the victim's killing might have reported that he had information about the case.
.

Albert Gaines testified he was a former resident of the Nashville neighborhood in which the shooting occurred but was currently serving a thirteen-year prison sentence at Hardeman County Correctional Facility. He said he was acquainted with the petitioner and familiar with the victim, who had a reputation for violence and was known in the community for terrorizing people. Gaines testified he was robbed and shot at by the victim one to two weeks before the victim was killed. He said he had also heard that the victim robbed and shot at a cab driver the next morning.

Gaines testified he was coming out of a house on Settle Court Drive at about lunch time on the day that the victim was killed when he saw the victim holding a revolver at the petitioner's back and heard him telling the petitioner, "[C]ome on, let's go." He said the petitioner and the victim walked up one sidewalk, and he went down the other sidewalk. He did not telephone the police because he had an outstanding warrant for a probation violation at the time. Gaines testified he later related what he saw to a friend, who in turn contacted the petitioner's family. On cross-examination, he testified he did not report to the police that the victim had robbed him and did not tell anyone at the time about the incident he witnessed between the petitioner and the victim. In response to questioning by the post-conviction court, Gaines testified that his conversation with his friend about the incident occurred approximately a month prior to the post-conviction hearing.

Trial counsel testified he had been licensed to practice law since September 30, 1978, and that his practice consisted primarily of criminal defense work. At the time he was appointed to represent the petitioner, he had previously represented many criminal defendants, including ones charged with Class A felonies. Trial counsel said the petitioner was represented at the preliminary hearing by other counsel, but he obtained and reviewed a copy of the preliminary hearing tape and transcript and discovery from the State. He also met with the petitioner and felt that he and the petitioner established a working attorney/client relationship.

Trial counsel testified he strongly advised the petitioner not to testify at his murder trial and explained his reasons:

> Well, there were several reasons. Number one, the State had failed to produce any evidence that [the petitioner] was the shooter, that [the petitioner's] gun was involved or anything linking [the petitioner] with the inside of [the victim's] apartment where the body was found.

Secondarily, in my opinion, [the petitioner] did not make a particularly good witness, and that is just an experiential thing. It is an opinion I formed based upon opinions, I mean based upon experience in the last 23 years practicing law.

Lastly, I was concerned that [the petitioner's] prior record would be introduced, and would obviously go against his credibility in the event he decided to testify.

Trial counsel testified the petitioner told him his version of the events prior to trial, and they discussed what he considered to be the critical point, which he expressed to the petitioner as "[h]ow do we get from [the victim] behind you to you behind [the victim]?" He said it was the petitioner's ultimate decision to testify. In his opinion, the petitioner failed to adequately explain to the jury how he had come to shoot the victim four times in the back.

Trial counsel testified his records reflected two pretrial court proceedings at which he would have spoken to the petitioner about the murder case, as well as several hours of conversation that occurred at the Hardeman County facility after the petitioner was incarcerated on his especially aggravated robbery conviction. He had not heard of Garrett or Gaines before the post-conviction hearing and could not recall the petitioner's having supplied him with the names of witnesses other than the ones who testified at trial. Trial counsel said his notes indicated that Eric Brown testified at either the preliminary hearing or at the trial that he saw the victim holding a gun on the petitioner.[1] He agreed that he tried the case to the best of his ability and raised all objections he considered appropriate.

Trial counsel conceded on cross-examination that his billing statement reflected only 11 in-court and 5.5 out-of-court hours spent on the case. He explained, however, that some of the time he spent working on the murder case was reflected on his billing statement for the robbery case. He testified he did not have a private investigator at his law firm and, at the time he represented the petitioner, the courts did not appoint private investigators to assist in noncapital cases. He said he did not go to the housing project where the shooting occurred to attempt to locate any potential witnesses. Trial counsel testified he was unaware of any eyewitness to the shooting. However, Tina James testified at the preliminary hearing that she saw a gun lying beside the victim's body that was not recovered, and her testimony was read into the record at trial. Trial counsel agreed he might have used Gaines and Garrett at trial had he been aware of their potential testimony.

Trial counsel acknowledged he did not file a motion to suppress the photographic lineup identification made by a witness who testified she saw the petitioner running from the victim's apartment, did not file any motions in limine, and did not file a request for a ballistics expert. He testified he was able to get the medical examiner to testify that the levels of cocaine and alcohol

---

[1] At a later point in the hearing, the post-conviction court made it clear that Brown testified on the petitioner's behalf at the trial.

present in the victim's body could render someone aggressive, but was unable to get him to commit to saying that they would have rendered the victim aggressive. He might, therefore, have hired his own toxicologist or pharmacologist if he had had the resources to do so. He acknowledged the trial court asked him at the beginning of the trial whether his defense was first aggressor or self-defense or both and that he replied, "First aggressor probably."

In response to questioning by the post-conviction court, trial counsel testified that, because the petitioner had admitted to him that he shot the victim, he would not have hired a ballistics expert because he did not think a ballistics expert would have helped the case. He agreed first aggressor and self-defense were not mutually exclusive theories of defense and, in fact, often went hand-in-hand together, but said his defense had centered around a theory of self-defense, in which he attempted to show that the petitioner had been afraid that the victim was going to kill him. Trial counsel said he "[a]bsolutely[,] [a]bsolutely" advised the petitioner not to testify, explaining to him while sitting at the defense table that the State had presented a relatively weak first degree murder case against him, as it could not place him either pulling the trigger or in the victim's apartment. It was the petitioner, he said, who first supplied the information that he had shot the victim in the back. Had the petitioner not testified, counsel thought it would have been much easier for the jury to either acquit him outright or reach a "compromised verdict of voluntary manslaughter."

On December 18, 2002, the post-conviction court entered a lengthy and detailed order dismissing the petition for post-conviction relief on the basis that the petitioner had failed to demonstrate by clear and convincing evidence that he was denied the effective assistance of counsel. Thereafter, the petitioner filed a timely notice of appeal to this court, arguing that the post-conviction court erred in dismissing his petition.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## III. Claims of Ineffective Assistance of Counsel

### A. Failure to Investigate or Identify Witnesses

The petitioner first contends he was denied the effective assistance of counsel by trial counsel's failure to investigate, identify, and present defense witnesses. He argues Gaines and Garrett's testimony would have corroborated his claim of the victim's having held a gun on him, and

that trial counsel's failure to go into the neighborhood to investigate was the reason he did not know of their existence and potential testimony.

With respect to this claim, the post-conviction first noted that neither Garrett nor Gaines reported to the police the incident they each claimed to have witnessed. The court then observed that the petitioner's brother testified about the victim's reputation in the community for violence, and Eric Brown testified that on the day of the shooting, he observed the victim holding what appeared to be a gun against the petitioner as he led him to his apartment. The court therefore concluded that Gaines and Garrett's testimony would have been merely cumulative, and that the petitioner failed to meet his burden of showing how counsel's alleged deficiency in failing to locate the witnesses had prejudiced the outcome of his case. The post-conviction court's order states in pertinent part:

> As stated previously, the Court finds that Petitioner was not prejudiced by the fact neither Mr. Gaines nor Mr. Garrett testified at trial nor was Petitioner prejudiced by trial counsel's alleged deficient performance in failing to identify or interview witnesses to testify as to the deceased's reputation. Petitioner admitted to shooting [the victim], so the critical issue at trial was whether that shooting was justifiable as self-defense. Since no one observed what occurred inside the apartment nor did anyone observe the shooting, there was really no witness available that would help Petitioner's case. The critical point in the case was explaining how the Petitioner got behind the deceased to shoot him in the back. Accordingly, the Court finds that Petitioner did not carry his burden to establish how he was prejudiced by trial counsel's deficient performance.

We conclude the record fully supports the post-conviction court's findings and conclusions. As the court noted, the victim's reputation in the community for violence and the fact that he was seen on the day of the shooting holding a gun to the petitioner's back was brought out at trial by other witnesses, who, by their testimony, provided corroboration of the petitioner's claim of having been held at gunpoint by the victim, whom he feared because of his reputation for violence. Neither Gaines nor Garrett claimed to have witnessed the critical moment of the shooting itself. We, therefore, agree with the post-conviction court that Gaines and Garrett's testimony would have been merely cumulative, and the petitioner has not established he was prejudiced by their failure to testify at trial.

We further conclude that the petitioner failed to show by clear and convincing evidence that trial counsel was deficient for failing to locate the witnesses. Gaines testified he did not report what he saw to police because he had an outstanding warrant for a probation violation at the time. He said about a month before the post-conviction hearing, he told a friend he had information about the case, and she in turn contacted the petitioner's family. Thus, at the time trial counsel would have been preparing witnesses for trial, Gaines had apparently not shared his information with anyone. Garrett also testified he did not report what he witnessed to the police or to the petitioner's family, and that

it was only sometime later that he recounted the story to a group of beer-drinking friends, from whom word that he might have information about the case apparently reached post-conviction counsel. However, there is nothing in the record to suggest that the information was generally available before the petitioner's trial. Even if trial counsel had canvassed the entire neighborhood, going door to door in an attempt to locate potential witnesses, there would have been no guarantee that he could have located Gaines and Garrett, or that they would have been willing to inform him, at the relevant time, about the incident they witnessed.

## B. Failure to Prepare a Defense Theory

The petitioner next contends he was denied the effective assistance of counsel by trial counsel's failure to develop a defense theory of the case. He argues that the evidence shows trial counsel failed to adequately prepare for the case and failed to develop a consistent theory of defense, as evidenced by his response to the trial court that his defense would probably be first aggressor and his testimony at the post-conviction hearing that his defense had centered around self-defense. The petitioner asserts trial counsel's failure to file a pretrial motion to suppress the photographic lineup identification and his failure to adequately confer with him before trial hindered the development of a consistent theory of defense and further prejudiced his case.

The post-conviction court accredited trial counsel's testimony about the time he spent in pretrial consultation with the petitioner and concluded the petitioner failed to show by clear and convincing evidence that counsel failed to confer with him about his defense strategy or that he was prejudiced by counsel's alleged deficiencies in communication. The court found nothing suggestive about the photographic lineup and concluded the petitioner failed to show he was prejudiced by counsel's failure to file a pretrial motion to suppress the identification. Finally, with respect to the petitioner's claim that trial counsel failed to present a consistent theory of defense, the post-conviction court made the following findings of fact and conclusions of law:

> Despite Petitioner's suggestion, first aggressor and self-defense are not mutually exclusive theories. The concepts of first aggressor and self-defense are interrelated. Under the first aggressor rule, self-defense is not available to a defendant who initiates the force. Tenn. Code Ann. § 39-11-611(d). Thus, to prove self-defense, the defendant must provide evidence that the victim was in fact the first aggressor. Petitioner's sole argument that counsel did not develop a consistent theory of defense rests on the fact that after the first day of trial testimony, the Court inquired of defense counsel as to the nature of his defense and counsel stated, "First aggressor, probably." At trial, the defense presented testimony and argued that the Petitioner shot the decedent out of self-defense. As part of the defense's case, the defense put forth evidence demonstrating the decedent's reputation for violence and aggression. Since the defense of self-defense and first aggressor are interrelated, the Court finds no

inconsistency in the defense's case. The Petitioner has not carried his burden that he was prejudiced by counsel's alleged deficient performance[.]

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel was an experienced criminal defense attorney with substantial experience in handling serious criminal trials. He testified he met with the petitioner several times before trial, which included a prison visit that lasted several hours. He also testified he discussed defense strategy with the petitioner and the critical weakness in the petitioner's proposed trial testimony, in which the petitioner failed to adequately explain the circumstances under which he shot the victim in the back. Trial counsel said he strongly advised the petitioner not to testify, but the petitioner was adamant about wanting to tell his story to the jury and ultimately decided to take the stand.

There is nothing to support the petitioner's claim that trial counsel was unprepared for trial or failed to develop or present a theory of defense. Trial counsel testified his defense centered around a theory of self-defense. In support of that defense, he presented at least two witnesses who offered testimony about the victim's reputation for violence and the fact that he had been seen holding a gun on the petitioner on the day of the shooting. In addition, Tina James's preliminary hearing testimony that she saw a gun lying beside the victim was read into the record at trial. Thus, there was ample evidence to bolster the petitioner's testimony about the circumstances leading up to the shooting and to lend support to his claim of having acted in self-defense. We conclude, therefore, that the petitioner has not met his burden of showing by clear and convincing evidence either that trial counsel was deficient for failing to develop a theory of defense or that any alleged deficiency on counsel's part prejudiced the outcome of his trial.

## CONCLUSION

Based on our review, we conclude the petitioner has failed to show he was denied the effective assistance of counsel. Accordingly, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE