# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

### Assigned on Briefs December 12, 2006

## CARLOS ANGEL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-B-858     Cheryl Blackburn, Judge**

---

### No. M2005-02966-CCA-R3-PC - Filed December 29,2006

---

The petitioner, Carlos Angel, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received the effective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Carlos Angel.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was convicted of aggravated sexual battery by a Davidson County Criminal Court jury in May 2002 and was sentenced by the trial court to ten years at 100% in the Department of Correction. This court affirmed his conviction and sentence on direct appeal. See State v. Carlos Salvador Angel, Jr., No. M2002-02982-CCA-R3-CD, 2004 WL 367715, at *1 (Tenn. Crim. App. Feb. 27, 2004). Our direct appeal opinion recites the circumstances surrounding the petitioner's crime:

> On the evening of June 18, 2000, Christina Tu agreed to babysit her friend's ten-year-old daughter. Present at Ms. Tu's apartment that evening was the [petitioner], who was Ms. Tu's boyfriend, Ms. Tu's two children, the [petitioner's] two children, and the ten-year-old victim. Eventually, everyone retired to their

bedrooms, with the exception of the victim, who remained in the living room watching television.

After everyone went to bed, the [petitioner] returned to the living room wearing only his boxers and a shirt. After checking his computer e-mail, he laid on the couch. At this time, the victim was lying on the second couch, still watching television. The [petitioner] asked the victim to sit on his lap, and she complied. The [petitioner] then asked if she had ever seen a man's "privates." She responded, "no." He then asked the victim if she wanted to see a man's "privates." Again, she responded, "no." The [petitioner] then cupped the victim's chin in his hand, turned her head toward him, and asked if she wanted to kiss him. At this point, the victim turned away from the [petitioner].

The [petitioner] proceeded to place his hand under the victim's shirt and began rubbing her stomach. Gradually, the [petitioner] moved his hand upward until he was fondling her breasts. This behavior continued for approximately five minutes. The [petitioner] then removed his hand and obtained the victim's promise that she would not repeat what happened.

Id.

On February 22, 2005, the petitioner filed a *pro se* petition for post-conviction relief, alleging that he was denied the effective assistance of trial counsel. Post-conviction counsel was appointed and on June 24, 2005, the petitioner filed an amended petition in which he alleged that counsel was ineffective for failing to call the petitioner's son, who had observed a portion of the encounter between the petitioner and the victim, as a witness at his trial.

The petitioner and trial counsel each testified at the September 14, 2005, evidentiary hearing. In addition, the petitioner introduced the August 17, 2005, deposition testimony of his son, Anthony Michael Angel, as an exhibit to the hearing. The petitioner testified that he met with trial counsel at her home four or five times prior to trial, where they discussed the facts and details of his case. He said he also spoke with her once by telephone to tell her that his son's uncle had mentioned that Anthony might have information that would be helpful to his case. The petitioner stated that trial counsel made an appointment to meet with him and Anthony and that she subsequently spoke with Anthony for about ten to fifteen minutes outside the petitioner's presence. Afterwards, she told the petitioner that Anthony said that he had overheard the petitioner asking the victim to get off his lap. However, she also told the petitioner that she did not think that Anthony would make a very credible witness. The petitioner testified that trial counsel did not explain her reason for thinking that Anthony would not be a good witness and that he did not question her judgment in the matter.

In the deposition, Anthony, who was eleven years old at the time of the incident, testified that he went to the kitchen to get a drink of water during the time that the victim and the petitioner were in the living room. During his trip, which took "[a] few minutes, tops," he saw the victim "jumping

around" on the petitioner's lap and overheard the petitioner asking her "a couple [of] times" to get off. Anthony testified that the day after his father's arrest he told a family friend, Robin, about what he had seen. He said he later talked to trial counsel about what he had seen and overheard. However, he was unable to remember very much of his conversation with trial counsel or the circumstances surrounding their meeting. Anthony further testified that the victim was sitting sideways on the petitioner's lap with her back turned toward Anthony. He acknowledged that he therefore would have been unable to see the position of the petitioner's hands, or whether the petitioner had been touching the victim's breasts.

Trial counsel testified that she had been licensed to practice law in Tennessee since 1991 and had also been licensed to practice law in Georgia and in England and Wales. She said she was initially retained by the petitioner, was subsequently appointed by the trial court, and eventually represented the petitioner through his trial and the direct appeal of his conviction. Referring to her notes, trial counsel testified that she interviewed Anthony on February 13, 2001, in the presence of the petitioner. According to her notes, Anthony told her that he had gone to get a quick drink of water and had seen the victim "jumping around" in the living room. She said Anthony told her that he was in the kitchen for two or three minutes before returning to his bedroom.

Trial counsel testified that she had nothing in her notes about Anthony's having seen the victim on the petitioner's lap or having overheard the petitioner asking her to get off his lap. She further testified that she would have considered such details important and would have recorded them in her notes. Trial counsel stated that she told the petitioner that she did not believe Anthony's testimony would help his case and why:

> I don't remember the specifics of it, but we discussed whether or not there would be a value in terms of him being a witness, and I explained to him what I just explained, which is that I didn't think there was enough similarity between Anthony's testimony and what his [the petitioner's] testimony at trial was going to be; that it . . . was simply a snapshot in time of two to three minutes. It didn't -- it certainly didn't negate everything from happening. I think there's . . . a risk of putting a child on in a case like that. I think you have to deal with a juror -- jurors getting particularly upset about something like that. I just didn't -- I didn't think that the benefit outweighed any risk that we had in terms of if there were inconsistencies that were brought up between [the petitioner's] testimony and Anthony's testimony.

On cross-examination, trial counsel testified that it was her habit to take very thorough notes when interviewing a witness.

On December 19, 2005, the post-conviction court entered an order denying the petition for post-conviction relief, finding that the petitioner had not met his burden of demonstrating that counsel was deficient for failing to call Anthony as a witness or that he was prejudiced as a result of counsel's alleged deficiency. Thereafter, the petitioner filed a timely appeal to this court.

**ANALYSIS**

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The record in this case fully supports the findings and conclusions of the post-conviction court. On appeal, the petitioner bases his ineffective assistance of counsel claim on trial counsel's failure to call his son, Anthony, as a corroborating witness at trial. However, trial counsel, who said that she took very good notes when interviewing witnesses, testified that she had written nothing about Anthony's having overheard the petitioner asking the victim to get off his lap. She also

testified that she would have found such a detail important and would have recorded it in her notes had Anthony related such information to her. Instead, her notes reflected only that Anthony had made a very quick trip to the kitchen for water and, during the trip, had seen the victim "jumping around" in the living room with the petitioner. Trial counsel also recorded in her notes that Anthony was unable to provide many details of the scene. We agree, therefore, that the petitioner has not shown that trial counsel was deficient for failing to call Anthony as a witness or that Anthony's testimony would have altered the outcome of his trial.

## CONCLUSION

We conclude that the petitioner has not met his burden of showing that he is entitled to post-conviction relief from his conviction. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE