IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 12, 2008

**MICKEY JEFFRIES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. P-25642      W. Otis Higgs, Jr., Judge**

_____

**No. W2007-02407-CCA-R3-PC  - Filed January 6, 2009**

_____

The petitioner, Mickey Jeffries, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance by his failure to adequately communicate a plea agreement to him.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Jake Erwin (at hearing) and Claiborne H. Ferguson (on appeal), Memphis, Tennessee, for the appellant, Mickey Jeffries.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Following a jury trial, the petitioner was convicted in the Shelby County Criminal Court of first degree felony murder in the perpetration of rape and sentenced to life imprisonment.  His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal.  State v. Mickey Jeffries, No. W1998-00002-CCA-R3-CD, 2000 WL 135388, at *1 (Tenn. Crim. App. Feb. 2, 2000), perm. to appeal denied (Tenn. Sept. 11, 2000).

On September 17, 2001, the petitioner filed a *pro se* petition for post-conviction relief in which he raised numerous claims, including ineffective assistance of trial counsel.  Post-conviction counsel was appointed and subsequently filed a notice that no amended petition would be filed.

Trial counsel was deceased by the time of the June 2, 2006, evidentiary hearing. The assistant district attorney who prosecuted the case, testifying on the State's behalf, said that she had worked with trial counsel, an assistant public defender, many times over the years and that he was "very well prepared" in this case, as he was in every case. She particularly recalled the excellent job trial counsel had done in cross-examining the medical examiner at trial. She said that the petitioner had originally been indicted for criminally negligent homicide, but the medical examiner's further research had resulted in the charge being upgraded to felony murder. Trial counsel, through cross-examination, was able to elicit information unknown to the prosecuting attorneys, namely, that the medical examiner had issued two death certificates for the victim:

> And what he was able to get Dr. Gunther to testify to was that she had, unbeknownst to us, issued two death certificates. The first one had ruled that this victim had died of natural causes, of a heart attack.

> The second one, after looking at the crime scene evidence and reviewing the several conflicting statements that the defendant . . . gave . . . to the police department, she then ruled the cause of death, positional asphyxia.

On cross-examination, the prosecutor acknowledged that she was not privy to counsel's conversations with the petitioner, had no idea how many times he had met with or talked to the petitioner outside of the courtroom, and did not know what he had done in preparation for trial. She said she could not "imagine that there would have been" an offer made to the petitioner on the criminally negligent homicide charge because, as she recalled, the superseding felony murder indictment came fairly soon after the criminally negligent homicide indictment. Therefore, there was not "a big lag in time that [they] would have been working up this criminally negligent homicide file and relaying offers and going back and forth." She stated that the only offer they would have made on the day of trial would have been for the petitioner to plead guilty to the offense in exchange for a life sentence, as they would have had no reason to deviate from the Shelby County District Attorney's "no deals" policy, which had already been put into effect by that time.

The petitioner testified that trial counsel met with him only on court dates, each time informing him that his case had been reset. Trial counsel never explained the charges against him, did not provide any copies of discovery, and never discussed any defense strategies or trial tactics. The petitioner claimed, in fact, that he did not even know that he was facing a felony murder charge rather than the original criminally negligent homicide charge until his trial began. He also had no idea until he was brought into the courtroom on the day of trial that his trial was scheduled to begin that day. Consequently, he was not dressed for court and had to be tried in his jail uniform.

According to the petitioner, just before the trial began, trial counsel met with him for about five minutes, the longest conversation he ever had with him, to tell him that the State was offering a plea bargain of twenty years. He said he refused that offer because he believed he was still facing a charge of criminally negligent homicide: "I told him no. I said, I was aware that my charge is criminally negligent homicide and I don't believe that carries twenty-years. And he was like, well

-2-

we already done got the jury in there, let's go ahead and start." He stated that, had he known his charge was felony murder, he would "[m]ost definitely" have accepted the twenty years offered by the State. On cross-examination, the petitioner acknowledged having confirmed during voir dire before the trial court that counsel had discussed with him more than once whether or not he should testify in his own defense.

On August 30, 2007, the post-conviction court entered an order denying the petition, finding, among other things, that the petitioner had not met his burden of showing that counsel was deficient or that any alleged deficiency prejudiced the outcome of his case. On October 12, 2007, the petitioner filed an untimely appeal to this court, followed by a September 5, 2008, motion requesting that we waive the timely filing. By order entered on September 10, 2008, we granted the motion.

## ANALYSIS

On appeal, the petitioner contends that trial counsel's failure to communicate, particularly with respect to the superseding indictment and the negotiated plea agreement, constituted ineffective assistance of counsel. The State responds by arguing, among other things, that the record supports the post-conviction court's denial of the petition. We agree with the State.

A post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

In denying relief on the claim that the petitioner raises on appeal, the post-conviction court's order states in pertinent part:

> Petitioner has not demonstrated that Counsel failed to communicate, advise, or investigate his case beyond Petitioner's mere conclusory allegations. Examination of the trial transcript shows that Counsel was well-prepared and subjected the [S]tate to zealous representation of Petitioner. In light of the strength of the case against Petitioner, . . . Counsel did the best job possible but was unable to prevail. In addition, Counsel met with Petitioner numerous times in court. Further, even if Petitioner could show inadequate communication, Petitioner has not shown how such a lack of communication prejudiced his trial[.]

The record fully supports the findings and conclusions of the post-conviction court. The assistant district attorney who prosecuted the case could not recall any offer having been made to the petitioner on the day of trial and said that the only offer that would have been made, due to the "no deals" policy in effect, would have been for the petitioner to plead guilty in exchange for a life sentence. The post-conviction court obviously accredited the testimony of the prosecutor over that of the petitioner, as was within its province. Accordingly, we conclude that the petitioner has not met his burden of demonstrating that counsel was deficient in his communication or that he was prejudiced as a result of that alleged deficiency.

## CONCLUSION

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE