IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## GEORGE HAMPTON v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 03-01711    John T. Fowlkes, Jr., Judge

No. W2008-00996-CCA-R3-PC  - Filed August 21, 2009

The petitioner, George Hampton, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance by failing to properly investigate and prepare the case for trial. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Eric Christensen, Memphis, Tennessee, for the appellant, George Hampton.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2004, the petitioner was convicted by a Shelby County jury in two separate cases of one count of especially aggravated robbery, three counts of aggravated robbery, and one count of aggravated assault. The trial court subsequently sentenced him as a Range III, persistent offender to an effective sentence of one hundred and sixty-five years in the Department of Correction. We affirmed his convictions and sentences on direct appeal, and our supreme court denied his application for permission to appeal. See State v. George Hampton, No. W2004-01248-CCA-R3-CD, 2005 WL 1651659, at *1 (Tenn. Crim. App. July 14, 2005), perm. to appeal denied (Tenn. Dec. 27, 2005).

Our direct appeal opinion reveals that the petitioner's convictions stemmed from his participation in the July 30, 2002, armed robberies in east Memphis of an elderly physician, Dr. Charles White, and three newspaper salesmen, John Norris, Henry Skelton, and Mark Mears. Id. at

**1-2. The robbery of Dr. White occurred at approximately 6:15 a.m. on July 30, 2002, outside the Memphis Surgery Center, and the robberies of the other men occurred a few moments later in the parking lot of a nearby Steak and Ale Restaurant. Id. Several eyewitnesses identified the petitioner and he gave a statement to police admitting his participation in the crimes. Id. at **2-3. The petitioner also gave statements admitting his participation in five additional armed robberies that occurred that same morning. Prior to trial, the judge ruled that the State could not introduce evidence of those additional robberies "but cautioned [the petitioner] that the other statements might be admissible if he testified inconsistently with his prior statements or mentioned the other robberies during his testimony." Id. at *3. During his testimony, the petitioner brought up one of the other robberies to argue that he could not have committed the offenses in the time frame alleged. Id. Consequently, on cross-examination the State was allowed to introduce his statements admitting to his participation in the July 30, 2002, robberies of Kennedy Anthony at 12:25 a.m., Rodney Peterson at 2:15 a.m., Ray Penno at 2:50 a.m., Donald Allen at 4:20 a.m., and Charles Liberto at 6:12 a.m. Id.

On September 12, 2006, the petitioner filed a *pro se* petition for post-conviction relief in which he raised claims of ineffective assistance of trial and appellate counsel. With respect to his claim of ineffective assistance of trial counsel, he alleged that counsel was ineffective for, among other things, failing to adequately confer with him prior to trial; failing to properly investigate and prepare the case for trial, which included his failure to present alibi witnesses; and failing to effectively cross-examine the State's witnesses, particularly with respect to their identifications of the petitioner. Post-conviction counsel was appointed to represent the petitioner, and an evidentiary hearing was held on April 25, 2008.

The petitioner began his testimony at the hearing by complaining that trial counsel, who "wasn't seeing eye to eye" with him, never really talked to him about the case. He claimed that counsel failed to provide him with copies of discovery, to discuss the evidence against him, or to inform him of his possible sentences if convicted of all the offenses. He also criticized counsel for his failure to call Dr. White, the victim of the especially aggravated robbery, as a witness at trial and for his failure to cross-examine Dr. White's wife. According to the petitioner, Dr. White's testimony would have revealed to the jury that he was unable to identify the petitioner and cross-examination of Mrs. White could have highlighted the inconsistency between her description of Dr. White's intermittent mental confusion and the fact that he was still able to drive his vehicle.

The petitioner further complained that trial counsel waited too long to hold the hearing on his motion to suppress his statements to police. He said that a police officer testified on behalf of the State at that hearing, but the trial court "held back" all the evidence that the petitioner wanted to present and trial counsel "just s[a]t there" without objecting. The petitioner also expressed his unhappiness at trial counsel's failure to have the various witnesses' pretrial identifications suppressed, implying in somewhat vague testimony that counsel was remiss in not presenting sufficient evidence and not strenuously arguing the motion: "Yeah, but [the motion to suppress the identifications] was brief. It wasn't -- it was like he was turning everything down whatever we was trying to do it but it was -- it wasn't."

The petitioner testified that he had wanted counsel to pursue a defense based on mistaken witness identification, but counsel refused to do so. Counsel also failed to act on information he gave him about alibi witnesses. The petitioner said that he told counsel that his girlfriend, Karen Burns, and an elderly man named "Mr. Charlie" could provide him with alibis, but counsel did not contact anyone. The petitioner stated that his brother, Mario Hampton, could have also provided an alibi, but then admitted that he never told counsel about him. He conceded that counsel did investigate the backgrounds of the State's witnesses but found nothing with which to impeach their credibility.

The petitioner testified that he had not wanted the two particular cases that were consolidated for trial tried together. He indicated, however, that he had wanted a different robbery consolidated with one of the cases at bar in order to show the impossibility of his having committed the offenses in the time frame alleged:

> A.   I wanted to be tried separate. Excuse me. It was a 6:15 robbery that happened and it was a 6:16 and 6:20. I wanted . . . to go to trial separate on the 6:15 because the 6:15 they say I -- well, the 6:15 happened in a minute of 6:16 and so –

> Q.   We're talking about times. Was that 6:15 a.m. in the morning?

> A.   Uh-huh. Yeah, a.m. in the morning. And so I was . . . trying to deal about the time frame of the robbery. So I wanted to have them . . . separated. So at the time of that right there I think all of them -- hold on -- special and the mens (indiscernible) they was together. The 6:15 robbery, they didn't even bring it up. I had to get on the stand and bring it up.

The petitioner concluded his direct examination testimony by reiterating that trial counsel completely failed to talk to him about the case, stating that he had proof that counsel came to see him in the jail only twice during the two years he represented him. The petitioner complained that there were racist elements to his prosecution because his "charges [were] on white people[.]" He said that he talked to counsel about it and gave him questions he wanted him to ask the witnesses, but counsel refused to ask them. Finally, he complained that "it was wrong the way that [trial counsel] let the judge abuse his power, his authority to object to everything [the petitioner] tried to present to the jury."

On cross-examination, the petitioner acknowledged that he and counsel did in fact talk about the case but said that it "wasn't like [they were] supposed to." He further acknowledged that counsel provided him with some discovery, but complained that he did not give him everything that he wanted, such as a copy of the "True Bill of Indictment."

Trial counsel testified that he had been licensed to practice law for twenty-six years, was employed with the public defender's office, and had been assigned to represent the petitioner within days of his arrest. He said he would take the petitioner at his word as to the number of visits the jail had recorded from him but that, in his experience, the jail's printouts were "woefully inaccurate." He stated that he was not the best record keeper in the world but thought he had references to at least

three jail visits in his file. In addition, he met with the petitioner on the eight or nine report dates, as well as at the time of the consolidation and 404(b) hearing. He testified that he provided the petitioner with copies of all the discovery in the case, which included the indictment, the petitioner's statements, the witness statements, and the statement of the petitioner's codefendant.

Trial counsel testified that the two eyewitnesses to Dr. White's robbery testified that Dr. White stumbled and fell facedown after having a sawed-off shotgun placed on him during the robbery. He said that one of the witnesses, who was approximately twelve feet away, also described having heard the bones in Dr. White's face crunch when he hit the pavement. Trial counsel stated that Dr. White was in a coma for "quite some time" and was never able to make a statement, even to the police. It, therefore, never occurred to counsel to call him as a witness at trial. In counsel's opinion, having Dr. White try to "wobble up to the witness stand and then hardly be able to speak" would have done nothing more than emphasize his injuries to the jury. Trial counsel also believed that cross-examining Dr. White's wife, who testified about her husband's injuries, would have only served to highlight those injuries.

Trial counsel did not recall having ever heard the names of either of the alibi witnesses mentioned by the petitioner. He testified that rather than mentioning any alibi, the petitioner consistently told him that his statements to the police were true. Despite that, the petitioner was "fixated" on a desire to try three of the robberies together with the idea that the State would be unable to prove that he could have committed all three in the approximate thirty-minute time frame they were alleged to have occurred. Trial counsel testified that he explained to the petitioner, first, that the robbery times were only approximations and, second, that he had driven the route himself and found that the impossibility defense would not work:

> And I told him, you know, it's like the Ted Bundy defense, you know, I did it but they can't prove I did it. And . . . these approximated times would be a silly reason to take it to trial because on three occasions, including this morning, I drove that very route. . . . It took me nine minutes and it's 3.3 miles.

Trial counsel testified that he saw nothing suggestive about the identification procedures. He said he believed that the motions to suppress them were "about as close to frivolous" as he could possibly get, but nevertheless filed them at the petitioner's request. In his opinion, the trial court conducted a full hearing and the outcome would not have been any different had the hearing been held earlier than the eve of trial. He said that he strongly advised the petitioner against testifying in his own defense, but the petitioner was adamant about doing so. Because the petitioner told him that his police statements were true and yet refused to tell him what he was going to say on the stand, he moved to withdraw from the case, advising the trial court that he was in an ethical dilemma. Trial counsel testified that his motion to withdraw was denied, as was his request for permission to file an interlocutory appeal to this court. He, therefore, saw no other option than to have the petitioner testify in a narrative fashion at trial: "So -- and again, as I understood the rules then, I had to ask for what would otherwise be an objectionable narrative and . . . one of the first words out of his mouth was about one of the cases not at trial and he didn't do very well."

Appellate counsel testified that out of the three hundred appeals she had handled, the petitioner's was one of less than five in which she did not challenge the sufficiency of the evidence. She described the evidence against the petitioner as "staggering" and "just overwhelming," pointing out that there were five witness identifications as well as a witness who recorded the tag number of the petitioner's vehicle. She said she did not raise any issues with respect to the suppression of the petitioner's statements or the pretrial identifications because in her opinion those were losing issues.

At the conclusion of the hearing, the post-conviction court orally denied the petition, finding that the petitioner had not met his burden of demonstrating either a deficiency in counsel's representation or prejudice to his case. The court entered its written order containing detailed findings of fact and conclusions of law on December 1, 2008.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S.

at 688, 104 S. Ct. at 2065; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

The petitioner contends on appeal that trial counsel provided ineffective assistance by failing to adequately communicate with him, not interviewing Dr. White, not cross-examining Mrs. White, making no effort to direct his testimony away from the other alleged crimes, and failing to timely file the motions to suppress the statements and the witness identifications.

In its order denying relief, the post-conviction court found, among other things, that the petitioner had presented nothing other than his own bare allegations in support of his claim that counsel was deficient for failing to adequately communicate with the petitioner, investigate the case, or file the various pretrial motions. With respect to the petitioner's claim of inadequate communication, the court specifically noted that the petitioner's own evidentiary hearing testimony was full of references to his conversations with counsel. The post-conviction court accredited the testimony of trial counsel that the petitioner never mentioned any alibi witnesses to him and observed that the petitioner failed to present these alleged alibi witnesses at the evidentiary hearing. The court further found that counsel was not deficient for failing to interview or call Dr. White as a witness, failing to cross-examine Mrs. White, or failing to directly examine the petitioner, concluding that counsel had valid grounds for his belief that the petitioner would not testify truthfully and had made sound strategic decisions not to call Dr. White as a witness or to cross-examine his wife.

The record fully supports the findings and conclusions of the post-conviction court. Although the petitioner repeatedly testified that trial counsel failed to communicate with him, it became clear during the course of his evidentiary hearing testimony that his real complaint was that counsel did not agree with or employ the tactics and strategy that he wanted. Trial counsel's testimony established that he met with the petitioner numerous times to discuss the evidence against the petitioner and the potential defense strategies. Trial counsel also provided the petitioner with copies of all the discovery in the case, which included the petitioner's various statements to police. Trial counsel explained to the petitioner why an impossibility defense would not work and pointed out to him the dangers of testifying in his own defense, but was unable to dissuade him from doing so. Trial counsel offered a sound rationale for not calling Dr. White as a witness or cross-examining his wife about his injuries, testifying that he believed both courses of action would have hurt, rather than helped, the petitioner's case. He offered an equally valid reason for not directing the petitioner's testimony, explaining that the petitioner, who had consistently told him that his statements to police were true, refused to tell him how he planned to testify at trial. Because counsel had no idea of what the petitioner would say and did not want to present perjured testimony, he allowed the petitioner to present his testimony in a narrative fashion. In sum, the petitioner has not met his burden of showing that trial counsel, an experienced defense attorney faced with a very difficult case in which the State's evidence against his client was overwhelming, was in any way deficient in his representation or that he was prejudiced as a result of any alleged deficiency.

## <u>CONCLUSION</u>

-6-

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE