IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2016

**DAVID LYNN BRUMMITT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County**
**No. C62781     James F. Goodwin, Jr., Judge**

---

**No. E2015-02452-CCA-R3-PC – Filed October 18, 2016**

---

The petitioner, David Lynn Brummitt, appeals the post-conviction court's denial of his petition for post-conviction relief, arguing he received ineffective assistance of counsel. After review, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., joined. ROBERT H. MONTGOMERY, JR., J., not participating.

Stephen M. Wallace, District Public Defender; and William A. Kennedy, Assistant Public Defender, Tennessee, for the appellant, David Lynn Brummitt.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Barry Staubus, District Attorney General; and Julie Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted of especially aggravated robbery, aggravated burglary, and reckless aggravated assault and was sentenced to terms of twenty-four, six, and four years, respectively. State v. David L. Brummitt, No. E2011-01002-CCA-R3-CD, 2012 WL 5333556, at *1 (Tenn. Crim. App. Oct. 30, 2012). The court ordered that the petitioner serve the six- and four-year terms concurrently on probation but consecutively to the sentence of twenty-four years in confinement. Id. On direct appeal, this court modified the petitioner's especially aggravated robbery conviction to aggravated robbery and remanded the case for sentencing as to that offense. Id. On remand, the trial court sentenced the petitioner to twelve years for the aggravated robbery

conviction. Id. The court also ordered that the petitioner serve the six- and four-year sentences in confinement, consecutively to each other and consecutively to the twelve-year sentence. Id. On appeal, the petitioner argued that his twelve-year sentence for the aggravated robbery conviction was excessive and that the trial court's resentencing him on the aggravated burglary and reckless assault convictions exceeded the scope of this court's order on remand in the direct appeal opinion. Id. This court affirmed the sentence imposed for the aggravated robbery conviction. Id. However, this court concluded that the trial court did not have jurisdiction to resentence the petitioner on the aggravated burglary and reckless assault convictions and held that the petitioner's original sentences on those convictions were to remain in effect. Id.

The underlying facts of the case were recited by this court in the second direct appeal as follows:

> On the night of January 1, 2008, the [petitioner] went to the home of Michael May, who knew the [petitioner] "from [the] neighborhood." At some point, the [petitioner] went into the kitchen to talk on his cellular telephone, and May heard the kitchen door open. Two men, one armed with a knife and one armed with a baseball bat, entered the home, forced May upstairs, and searched the upstairs area for money and drugs. After searching the upstairs rooms, the man with the knife kicked or pushed May down the stairs, and the two armed men searched the kitchen for money and drugs. When May's partner, Gary Adams, arrived and entered the home, the man with the bat hit Adams on the head, knocking him unconscious. Both of the assailants fled, taking money and jewelry. May also discovered that his Jeep, laptop, and cellular telephone were missing. May was certain that the two armed assailants did not take those items.

David L. Brummitt, 2012 WL 5333556, at *1 (internal citations omitted).

The petitioner filed a *pro se* petition for post-conviction relief and, following the appointment of counsel, an amended petition was filed as well. In his petitions, he raised numerous allegations of ineffective assistance of counsel including the eight allegations maintained on appeal – that trial counsel: (1) did not spend sufficient time meeting with him in order to properly and fully review and explain the law and evidence against him; (2) was ineffective in advising him not to testify at trial; (3) failed to obtain a transcript of the preliminary hearing and use it for impeachment of the victim; (4) failed to call a key witness, Ms. Casey Church; (5) failed to obtain phone records; (6) failed to investigate or give evidence concerning individuals whom he identified as the actual perpetrators; (7) failed to request a change of venue; and (8) told the jury in his opening statement that he would provide certain evidence and did not follow through.

At the evidentiary hearing, the petitioner's trial counsel testified that he met with the petitioner, who was incarcerated, to discuss strategy. Although he could not recall how many times he met with the petitioner, it was "a sufficient number of times to feel comfortable with the case and understand what [the petitioner's] issues were with the case." Their defense strategy was that one cannot be convicted for mere presence at a crime scene, and all the State had proven was that the petitioner was present at the scene but not in any way part of the crime.

Counsel testified that he contemplated calling the petitioner's girlfriend, Casey Church, to testify, but because Mr. May testified as to Ms. Church's calling the petitioner, he did not have her testify. Counsel said that he did not recall the petitioner asking him to obtain Mr. Adam's phone records, and he did not get them because he did not "see a reason to do so when [he] was preparing." Counsel said that he did not order a transcript of the preliminary hearing before trial. He said that it was his practice to listen to the preliminary hearing testimony, but he could not say under oath whether he did so in this case.

Asked what the purpose of getting a transcript of a preliminary hearing might be, counsel responded that a transcript could have been used to impeach Mr. May. However, counsel said that the defense strategy at the time of trial was not to discredit Mr. May, who was a sympathetic victim, but instead to show the jury that there was no proof the petitioner was involved in the crime. He did not put the petitioner on the stand to testify because he felt that the State had not met its burden, as all it proved was that the petitioner was at the scene. He said that, in hindsight, knowing the outcome, he would have tried the case differently.

Counsel testified that he subpoenaed Casey Church to testify. However, he decided not to have her testify because it was clear in the record from Mr. May's testimony that Ms. Church called the petitioner repeatedly that night and also the danger that she would say something that would reflect poorly on the petitioner. Counsel elaborated that Mr. May had testified that the petitioner left his phone at Mr. May's house, and Ms. Church had told counsel that she had received calls from the petitioner from that phone after the robbery occurred. The petitioner did not testify at trial but made an offer of proof in which he said that he was buying drugs from Mr. Adams and that was how he had gotten to know the actual perpetrators. Counsel was surprised by the petitioner's offer of proof because the petitioner had been unable to give him the names of the perpetrators before trial. Counsel did not investigate any of the names that the petitioner mentioned during his proffer because he did not have their names prior to trial.

Counsel acknowledged making three assertions in his opening statement: that the petitioner was at the victims' home that night looking for Mr. Adams from whom to buy

drugs; that the petitioner was on the phone with Ms. Church during the incident; and that the petitioner saw two men in the alleyway, one with a bat, as he left the victims' house. Asked if he thought it was important to follow up on the assertions made to the jury during opening statement, counsel acknowledged "that's what you want to do." Counsel testified that it was ultimately the petitioner's decision whether to testify, and he thought the petitioner would have testified had the trial court ruled differently on the admissibility of his prior theft conviction. Counsel said the decision not to call Ms. Church to testify was a joint decision.

On cross-examination, counsel testified that he did not recall the case getting a great deal of pretrial publicity, nor was there any indication that there was an issue with the venue. Counsel agreed that at a <u>Momon</u> hearing during the trial, he asked the petitioner whether he had followed up on anything the petitioner had asked of him, and the petitioner said that counsel had. At the <u>Momon</u> hearing, the petitioner also affirmed that counsel had met with him on numerous occasions to discuss his case and spent considerable time with him reviewing whether he should testify.

Casey Church testified that the petitioner is her son's father and on January 1, 2008, they were no longer together but still in communication with one another. Around 5:30 or 6:00 p.m. on the night of the incident, Ms. Church called the petitioner repeatedly until he eventually answered the phone. She said that she also met up with the petitioner sometime later that night, perhaps around 6:30 p.m. Ms. Church said that she talked to counsel and was subpoenaed for trial, but she was not called to testify.

The petitioner testified that counsel's not calling Ms. Church to testify was "very ineffective" because she talked to him "right around the same time the robbery happened and that she had seen [him] right after the robbery." The petitioner claimed that counsel did not read over the discovery motion before trial. The petitioner said that he asked counsel to follow up with Mike Arnold and Joel Gideon, who were mentioned in the motion for discovery, but counsel did not do so. The petitioner also claimed that he asked counsel to obtain cell phone records for both himself and Mr. Adams because Mr. Adams testified at trial that he spoke to the petitioner one time on the day of the incident, but the petitioner claimed that he spoke to Mr. Adams at least three to five times. The petitioner stated that he asked counsel to get a copy of the preliminary hearing transcript, but counsel did not obtain a copy in a timely fashion due to the cost. Almost a year after the trial, the petitioner received a copy of the transcript from counsel.

The petitioner testified that counsel told him that he was not going to have Ms. Church testify. Counsel never explained the reason behind his decision, and the petitioner "being naive . . . agreed to it." The petitioner stated that he decided not to testify because counsel told him repeatedly that the State did not prove its case. Counsel had also talked to him about his prior record and how that might hurt his case if he

testified. The petitioner testified that he believed there should have been a change of venue because Mr. May was an attorney in Sullivan County.

The petitioner testified that counsel only visited him three times prior to trial, with each visit lasting less than thirty minutes. The petitioner stated that there were photographs introduced the day of trial that he had never seen. One of those photographs was of the crime scene and showed a computer, which the victims claimed had been stolen, sitting on the sofa. Counsel did not object to any of Mr. May's testimony or to the introduction of the photographs. The petitioner stated that he asked counsel to obtain a continuance of the trial because counsel only received discovery four or five days beforehand.

On cross-examination, the petitioner acknowledged that he received the discovery from an attorney who represented him before counsel took over the case but claimed that counsel "never once pulled out any statement, any motion of discovery." However, he admitted that he and counsel discussed the case from the discovery the petitioner had received from his previous attorney. The petitioner stated that he felt counsel coerced him not to testify by telling him that "the scales of justice . . . tipped in our favor." The petitioner acknowledged that he told the trial court that counsel had discussed potential witnesses with him and followed up on anything the petitioner asked him to do. The petitioner also acknowledged that he told the trial court that counsel had spent considerable time with him discussing whether he should testify, that counsel went over the advantages and disadvantages of testifying, and that counsel told him that it was his decision alone to make. The petitioner admitted that he told counsel and the trial court that he voluntarily and personally waived his right to testify at trial. At no time did he tell the court he was coerced into not testifying. The petitioner acknowledged that he actively participated with counsel in selecting and striking jurors.

After the conclusion of the hearing, the post-conviction court entered a written order denying the petition. The court found that the petitioner failed to prove his allegations by clear and convincing evidence and that there was no reasonable probability of another result had counsel performed differently.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, our review of a post-

conviction court's application of the law to the facts of the case is <u>de novo</u>, with no presumption of correctness. <u>See</u> <u>Ruff v. State</u>, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed <u>de novo</u>, with a presumption of correctness given only to the post-conviction court's findings of fact. <u>See</u> <u>Fields v. State</u>, 40 S.W.3d 450, 458 (Tenn. 2001); <u>Burns v. State</u>, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>see</u> <u>State v. Taylor</u>, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The <u>Strickland</u> standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996) (citing <u>Strickland</u>, 466 U.S. at 688; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

Courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

With regard to the petitioner's allegation that counsel was ineffective in failing to spend sufficient time meeting with him in order to properly and fully review and explain

the law and evidence against him, the petitioner testified that counsel only visited him three times with each visit lasting less than thirty minutes. Counsel testified that he met with the petitioner to discuss trial strategy and, although he could not remember the exact number of times, it was sufficient for him to feel comfortable with the case and understand the petitioner's issues. Their strategy was that the petitioner should not be convicted for merely being present at the crime scene and that the State had not proven that the petitioner was in any way involved in the crime. The post-conviction court accredited counsel's testimony that he met with the petitioner a sufficient number of times to feel comfortable with the case and that he and the petitioner discussed and agreed on the strategy to be used at trial. The record supports the findings of the post-conviction court.

With regard to the petitioner's allegation that counsel was ineffective in advising him to not testify at trial, the petitioner acknowledged at the hearing that he affirmed to the trial court regarding his decision not to testify that counsel had spent considerable time with him discussing whether he should testify at trial and that it was his decision to make. The petitioner acknowledged having told the court that counsel discussed the advantages and disadvantages of testifying, and he told the court that he voluntarily and personally waived his right to testify. The petitioner acknowledged that at no time did he tell the court that he was coerced into not testifying. The post-conviction court found that the petitioner made a knowing and voluntary decision to not testify at trial and that counsel did not render deficient performance, nor was there a reasonable probability of a different result. The record supports the findings of the post-conviction court.

With regard to the petitioner's allegation that counsel was ineffective in failing to obtain a transcript of the preliminary hearing, counsel acknowledged that he did not order a transcript. Counsel testified that it was his practice to listen to the preliminary hearing testimony, but he could not say under oath whether he did so in this case. Counsel said that the purpose of a transcript may have been to impeach the victim; however, the defense strategy was not to impeach the sympathetic victim but to tell the jury that there was no proof the petitioner was involved in the crime.

The post-conviction court found that when given the opportunity to remark about trial counsel not procuring a transcript of the preliminary hearing, the petitioner did not discuss the matter and immediately started talking about other grounds raised in his petition. The post-conviction court accredited counsel's testimony and found that, despite his inability to specifically remember, counsel in all likelihood listened to the tape of the preliminary hearing and decided with the petitioner that their best strategy was to attempt to show the jury that the petitioner was merely present at the scene prior to the attack, not to attempt to discredit a sympathetic victim. The post-conviction court further accredited counsel's testimony that he and the petitioner met numerous times and discussed and agreed on the trial strategy. The evidence supports the post-conviction

court's conclusion that counsel did not render deficient performance in not obtaining a transcript of the preliminary hearing or that there was a reasonable probability of a different result had counsel obtained a transcript.

With regard to the petitioner's allegation that counsel was ineffective in failing to call Casey Church to testify at trial, counsel testified that he subpoenaed Ms. Church to testify but ultimately decided that her testimony could potentially be detrimental to the defense's theory of the case. Counsel said that the decision to not call Ms. Church was a joint decision by him and the petitioner, and the petitioner testified that he agreed with the decision although claiming he did so "naively." The post-conviction court found the petitioner's credibility to be lacking and concluded that he failed to prove that counsel performed deficiently or that there was a reasonable probability of a different result. The record supports the findings of the post-conviction court.

With regard to the petitioner's allegation that counsel was ineffective in failing to obtain phone records, the petitioner claimed that he asked counsel to obtain cell phone records for both himself and Gary Adams because Mr. Adams testified at trial that he spoke to the petitioner one time on the day of the incident, but the petitioner claimed that he spoke to Mr. Adams at least three to five times. In his brief, the petitioner additionally avers that Ms. Church's phone records would have also been "valuable." Counsel testified that he did not recall the petitioner's asking him to obtain phone records, and he did not get them because he did not "see a reason to do so when [he] was preparing." Accrediting counsel's testimony, as the post-conviction court did throughout its findings, counsel did not render deficient performance. Moreover, the petitioner has failed to show any reasonable probability that counsel's procuring these phone records would have resulted in a different outcome at trial.

With regard to the petitioner's allegation that counsel was ineffective in failing to investigate or give evidence concerning individuals whom he identified as the actual perpetrators, the petitioner testified that he asked counsel to follow up with Mike Arnold and Joel Gideon, who were mentioned in the motion for discovery, but counsel did not do so. However, the petitioner acknowledged that he told the trial court in a <u>Momon</u> hearing during the trial that counsel had discussed potential witnesses with him and followed up on anything the petitioner asked him to do. Counsel testified that he was surprised by the petitioner's offer of proof during trial because the petitioner had been unable to give him the names of the perpetrators beforehand. Counsel did not investigate any of the names that the petitioner mentioned during his proffer because he did not have their names prior to trial. Accrediting counsel's testimony, as the post-conviction court did throughout its findings, counsel did not render deficient performance. Moreover, the petitioner has failed to offer any proof that shows a reasonable probability that counsel's investigating the "actual perpetrators" would have resulted in a different outcome at trial.

-8-

With regard to the petitioner's allegation that counsel was ineffective in failing to request a change of venue, the petitioner made the blanket statement that he believed there should have been a change of venue because Mr. May was an attorney in Sullivan County. Counsel testified that he did not recall the case getting a great deal of pretrial publicity, nor was there any indication that there was an issue with the venue. The petitioner has failed to show a legitimate need that a change of venue should have been pursued and that there would have been a different outcome had counsel pursued one.

With regard to the petitioner's allegation that counsel was ineffective in telling the jury in his opening statement that he would provide certain evidence and not following through, counsel acknowledged making three assertions in his opening statement: that the petitioner was at the victims' home that night looking for Mr. Adams from whom to buy drugs; that the petitioner was on the phone with Ms. Church during the incident; and that the petitioner saw two men in the alleyway, one with a bat, as he left the victims' house. Asked if he thought it was important to follow up on the assertions made to the jury during opening statement, counsel acknowledged "that's what you want to do."

The petitioner claims that the "first and third assertion[s] intimated that the [petitioner] was going to testify." However, the petitioner made the knowing and voluntary decision to not take the stand, and his case was more than adequately presented to the jury through the witnesses who testified. The petitioner claims that the "second [assertion] could have been accomplished through Ms. Church." However, even without Ms. Church's testifying, as noted by counsel at the evidentiary hearing, it was clear in the record from Mr. May's testimony that the petitioner's girlfriend repeatedly called the petitioner that night, and counsel had a valid strategic decision for not having Ms. Church testify. The petitioner has failed to show that counsel performed in less than a constitutionally adequate manner as to this allegation.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE